IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PHILIP ANGELL, STEVEN BROWN,
TONNIE BECK, TAMMY MORRIS, and
DAWN BURNHAM, individually and on
behalf of all others similarly situated,

       Plaintiffs,

v.

GEICO ADVANTAGE INSURANCE
COMPANY, GEICO INDEMNITY
COMPANY, GOVERNMENT
EMPLOYEES INSURANCE COMPANY,
GEICO COUNTY MUTUAL INSURANCE
COMPANY, and GEICO CHOICE
INSURANCE COMPANY,

       Defendants.

CASE NO.:

Class Action

## CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiffs Philip Angell, Steven Brown, Tonnie Beck, Tammy Morris, and Dawn Burnham, individually and on behalf of all others similarly situated, file this Class Action Complaint against Defendants GEICO Advantage Insurance Company ("GEICO Advantage"), GEICO Indemnity Company ("GEICO Indemnity"), Government Employees Insurance Company ("Government Employees"), GEICO County Mutual Insurance Company ("GEICO County"), and GEICO Choice Insurance Company ("GEICO Choice") (collectively, "Defendants" or "GEICO"), and in support thereof state the following:

## NATURE OF THE ACTION

1.     This is a class action lawsuit by Plaintiffs who were named insureds under separate (but materially identical) Texas GEICO private passenger auto policies (the "Policies") issued for

physical damage including comprehensive and collision coverage. The Policies required payment of "actual cash value" ("ACV") in the event of a total loss. GEICO systematically underpaid Plaintiffs and thousands of other putative class members amounts owed to its insureds pursuant to their promise to pay the ACV of total loss vehicles insured with comprehensive and collision coverage.

2.      The Policies of all GEICO Defendants insuring Plaintiffs and all putative class members have identical material language relating to all claims in this lawsuit. All of the GEICO Defendants' Texas policies define ACV as "the replacement cost of the auto or property less depreciation and/or betterment." Plaintiffs attach, as Exhibit A, a GEICO Texas private passenger auto policy form that contains the material policy language providing coverage on first-party physical damage total loss claims. (Ex. A, Policy form, at 10[1], hereafter "the Policy"). The material Policy language is in all of the Policies, and is materially the same with regard to all claims against all Defendants alleged herein.

3.      GEICO has breached its Policies on first-party total loss claims by failing to pay the "replacement costs" mandated by Texas law, including sales tax, title transfer fees ("Title Fees"), and fees for registration, inspection, and emissions ("Registration Fees").

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because: (a) the Plaintiffs are members of the putative class, which consists of at least 100 members and Plaintiffs and/or putative class members and Defendants are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under § 1332 apply to this claim.

---

[1] All page cites to the Policy form are to the pdf, exhibit page number and not the internal page number on the Policy itself.

5.      Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and the Defendants are subject to personal jurisdiction in this district.

## THE PARTIES

6.      At all times material hereto, Plaintiff Philip Angell is and was a person domiciled and residing in Harris County, Texas, and a citizen of the State of Texas.  Plaintiff Brown's total loss claim was insured by GEICO Indemnity.

7.      At all times material hereto, Plaintiff Steven Brown is and was a person domiciled and residing in Travis County, Texas, and a citizen of the State of Texas. Plaintiff Angell's total loss claim was insured by GEICO Advantage.

8.      At all times material hereto, Plaintiff Tonnie Beck is and was a person domiciled and residing in Harris County, Texas, and a citizen of the State of Texas. Plaintiff Beck's total loss claim was insured by Government Employees.

9.      At all times material hereto, Plaintiff Tammy Morris is and was a person domiciled and residing in Harris County, Texas, and a citizen of the State of Texas. Plaintiff Morris's total loss claim was insured by GEICO County.

10.      At all times material hereto, Plaintiff Dawn Burnham is and was a person domiciled and residing in Travis County, Texas, and a citizen of the State of Texas. Plaintiff Burnham's total loss claim was insured by GEICO Choice.

11.      At all times material hereto, GEICO Advantage is and was a foreign corporation domiciled in the State of Nebraska and authorized to transact insurance in the State of Texas. GEICO Advantage's principal place of business and headquarters are both located in the State of Maryland.

12.     At all times material hereto, GEICO Indemnity is and was a foreign corporation domiciled in the State of Maryland and authorized to transact insurance in the State of Texas. GEICO Indemnity's principal place of business and headquarters are both located in the State of Maryland.

13.     At all times material hereto, Government Employees is and was a foreign corporation domiciled in the State of Maryland and authorized to transact insurance in the State of Texas. Government Employees's principal place of business and headquarters are both located in the State of Maryland.

14.     At all times material hereto, GEICO County is and was a corporation domiciled in the State of Texas and authorized to transact insurance in the State of Texas. GEICO County's principal place of business and headquarters are both located in the State of Texas.

15.     At all times material hereto, GEICO Choice is and was a foreign corporation domiciled in the State of Nebraska and authorized to transact insurance in the State of Texas. GEICO Choice's principal place of business and headquarters are both located in the State of Maryland.

## FACTUAL ALLEGATIONS

16.     Defendants' insured Plaintiffs and all putative class members during the class period under Texas private passenger auto insurance policies (the "Policies") providing coverage for physical damage.

17.     All of the Policies during the class period have policy terms with materially identical policy provisions relating to the physical damage coverage provided on total loss claims.

18.     The policy language insuring the total losses of Plaintiffs and every putative Class Member is the same in all material respects.

19.     GEICO Indemnity, GEICO Advantage, GEICO Choice, and GEICO County are all subsidiaries of Government Employees.  All Defendants operate under the GEICO brand, insure under the same policy forms, and have the same practices and procedures with regard to insuring and adjusting total loss claims.

## I.     TOTAL LOSS DETERMINATION.

20.     When insureds suffer damage (or loss) to a vehicle caused by a covered peril, GEICO determines the costs necessary to repair the damage to the vehicle, which might include replacement of component parts of the vehicle, paint, repair labor, and other expenses.

21.     If the amount required to repair the vehicle (plus any salvage value) exceeds the value of the vehicle *prior to the loss* (or as if the loss had not occurred at all), GEICO determines the vehicle to be a "total" or complete loss.

22.     The Policies require GEICO to cover first-party total loss claims by paying the ACV of the total-loss vehicle, which is "the replacement cost of the auto or property less *depreciation* and/or *betterment*."  (Ex. A, Policy form, at 10) (emphasis added.)

23.     In Texas, the costs necessary to replace a vehicle includes the base value of the vehicle plus sales tax, Title Fees, Registration Fees, and Inspection Fees.

24.     GEICO pays the underlying value of the total-loss vehicle as part of the ACV payment to insureds.  GEICO determines the underlying vehicle by determining the cost to purchase a similar vehicle.  GEICO thus acknowledges that the underlying value is, at minimum, reasonably necessary replacement costs.

25.     GEICO pays Title Fees on many claims as part of the ACV payment to total loss insureds, evidencing GEICO's acknowledgement that Title Fees are, at minimum, reasonably

necessary replacement costs. GEICO determines the location or residence of the insured, and includes either $28 or $33 in Title Fees, depending on the county.

26.     On many claims, GEICO pays sales tax as part of the ACV payment to insureds, indicating GEICO's acknowledgement that sales tax is, at minimum, a reasonably necessary replacement cost. GEICO determines the location or residence of the insured, and applies sales tax at the applicable rate depending on the county (state rate plus any local or county surtax) to the adjusted vehicle value of the total-loss vehicle.

27.     In some claims, however, GEICO does *not* include sales tax as part of the ACV payment to insureds, even though the *exact* same Policy language applies to all insureds, and even though the Policy does not include any language permitting it to distinguish between vehicles for purposes of its contractual obligations.

28.     Moreover, GEICO does not pay Registration Fees as part of the ACV payment to insureds, even though Registration Fees are necessary to replace a vehicle in the same way as underlying value, sales tax, and Title Fees.

29.     GEICO's failure to pay sales tax, Title Fees, and/or Registration Fees is a breach of the Policy obligation to pay replacement costs (less depreciation/betterment) to insureds who suffer a total loss of their insured vehicle.

30.     GEICO's failure is part of a uniform business practice applicable to all putative class members.

II.     **THE GEICO INSURANCE POLICY.**

31.     The Policies include the following coverage provisions applicable to all claims asserted herein.

32.     The Policies provide comprehensive and collision coverage with a coverage limit of ACV.

33.     The Policies define ACV, betterment, and depreciation as follows:

1.      "***Actual cash value*** is the replacement cost of the auto or property less ***depreciation*** and/or ***betterment***."

2.      "***Betterment*** is improvement of the auto or property to a value greater than its pre-loss condition."

…

6.      "***Depreciation*** means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes."

(Ex. A, Policy form at 10.)[2]

34.     The Policies provide as follows relating to PPA physical damage comprehensive and collision coverage:

3.      ***Collision*** means the upset of ***your covered*** **auto** or ***non-owned*** **auto;** or collision with another object including an attached vehicle.

4.      ***Comprehensive*** means ***loss*** caused other than by ***collision*** and includes but is not limited to the following causes:

   a.   Missiles or falling objects;
   b.   Fire;
   c.   Theft or larceny;
   d.   Explosion or earthquake;
   e.   Windstorm;
   f.   Hail, water or flood;
   g.   Malicious mischief or vandalism;
   h.   Riot or civil commotion;
   i.   Contact with bird or animal; or
   j.   Breakage of glass.

   If breakage of glass is caused by a ***collision*** or if ***loss*** is caused by contact with a bird or animal, **you** may elect to have it considered a ***loss*** caused by ***collision.***

---

[2] All bold and/or italics are in the original Policy.

35.     The Policies provide the following limit of liability for PPA physical damage

coverage:

**LIMIT OF LIABILITY**
1.      Our limit of liability for ***loss*** will be the lesser of the:
      a.      ***Actual cash value*** of the stolen or damaged property;
      b.      Amount necessary to repair or replace the property with other of like kind and quality; or
      c.      Amount stated in the Declarations of this policy.
2.      Our limit of liability for ***loss*** to a ***trailer*** not owned by ***you*** *is* $500.
3.      Our limit of liability for ***loss*** to personal effects arising out of one occurrence is $200.
4.      Our limit of liability for glass repair or replacement is limited to the prevailing competitive price. Although ***you*** have the right to choose any glass repair facility        or location, the limit of liability for ***loss*** to window glass is the cost to repair or replace such glass but will not exceed the prevailing competitive price. This is the price we can secure from a competent and conveniently located glass repair facility. At ***your*** request, we will identify a glass repair facility that will perform the repairs at the prevailing competitive price. We will not apply the applicable deductible if the glass ***loss*** is repaired rather than replaced.
5.      Our limit of liability for ***custom parts or equipment*** is limited to the ***actual cash value*** of the ***custom parts or equipment,*** not to exceed the ***actual cash value*** of the vehicle.
Our payment for ***loss*** will be reduced by any applicable deductible shown in the Declarations.

(*Id.* at 11.)

36.     The Policies define **Loss** as follows:

**DEFINITIONS**

…

8.      ***Loss*** means direct and accidental loss of or damage to:
      a.      The auto, including its equipment; or
      b.      Other insured property.

(*Id.* at 10.)  The Policies' definition of **Loss** applies to both collision and comprehensive coverage.

37.     The Policies define **covered auto** as follows:

**DEFINITIONS SECTION**

…

10. ***Your covered auto*** means:
   (a) Any vehicle shown in the Declarations;
   (b) Any ***trailer you*** own.
   (c) ***Temporary substitute auto***
   (d) Any of the following types of vehicles on the date ***you*** became the owner or enter into a lease for a term of six months or more during the policy period:

   1. A ***private passenger auto***; or
   2. A utility type vehicle, with a G.V.W. of 25,000 lbs. or less, of the pickup body, sedan delivery, panel truck, van type and multi-use type, not used for the delivery or transportation of goods, materials or supplies other than samples; unless,
      i. The delivery of goods, materials or supplies is not the primary usage of the vehicle; or
      ii. Used for farming or ranching;

(*Id.* at 3.)

38. The Policies do not define "total loss."

39. The Policies do not expressly reference the mandatory vehicle replacement costs of base vehicle value, sales tax, Title Fees, or Registration/Inspection Fees, but such replacement costs fall within the definition of ACV.

40. The Policies require GEICO to provide the same coverage for total losses under both comprehensive and collision coverage provisions.

41. The Policy contains no provision excluding sales tax or state and local regulatory fees from ACV.

42. The Policy defines "covered auto" as any vehicle listed in the declaration without distinction whether owned or leased. Policy at 3. The Policies coverage provisions are the same for all covered autos, regardless of whether the covered auto is owned without lien, financed, or leased.

43. Texas law requires payment of sales tax, Title Fees, Registration Fees and Inspection Fees on all vehicles, regardless of whether the vehicle is owned without lien, financed, or leased.

44. Texas law is clear that ACV includes costs reasonably likely to be incurred in property replacement. *Ghoman v. N.H. Ins. Co.*, 159 F. Supp. 2d 928, 934 (N.D. Tex. 2001) (Actual cash value is market value and "means repair or replacement costs less depreciation."); *Tolar v. GEICO Tex. Lloyd's Co.*, 772 F. Supp. 2d 825 (N.D. Tex. 2011) (noting that Texas courts define ACV as "cost of replacement minus depreciation" and holding that it is "settled law" that insurers may not deduct sales tax from ACV payments). In *Ghoman*, the court easily concluded that "replacement costs" means any costs likely to be incurred in replacement, including, among other things, sales tax. *Ghoman* at 934.

**A. Sales Tax Is A Mandatory Replacement Cost, Even for Leased Vehicles.**

45. Sales tax is imposed on every vehicle transaction and is reasonably likely to be incurred upon replacement of the total-loss vehicle. It is for this reason that GEICO pays sales tax on the large majority of its total loss claims, which involve non-leased vehicles.

46. GEICO does not pay sales tax on leased vehicle total loss claims, however, even though (1) sales tax is a mandatory cost for the replacement of any leased vehicle; (2) the Policies treat leased and non-leased vehicles the same; (3) GEICO charges the same premiums for leased and non-leased vehicles; (4) GEICO provides no notice to leased vehicle insureds that they will receive substantially less in coverage on their total loss claims (compared with non-leased vehicles) while paying the same premiums as non-leased vehicles.

47.     Texas imposes a sales tax of 6.25% on every leased vehicle.  As such, sales tax is part of the replacement cost of leased vehicles, as well as non-leased vehicles.  The Policies thus require payment of sales tax on leased vehicle total loss claims.

**B.     Title Fees are a Mandatory Replacement Cost.**

48.     Texas law imposes a mandatory title fee of either $28.00 or $33.00 (depending on the county) on the purchase of any vehicle, including, necessarily, the purchased replacement of a total loss vehicle. Tex. Stat. § 501.138(1).  It is illegal in Texas to drive a vehicle on the road until the owner has applied for title and paid the fee imposed thereon. Tex. Stat. § 501.022.  GEICO appears to properly pay title fees as part of ACV on most total loss claims because such fees are a mandatory replacement cost.

**C.     Registration Fees are a Mandatory Replacement Cost.**

49.     Texas law also makes it illegal to drive a vehicle without proper registration or tag. When a vehicle is sold, any existing registration expires, and the buyer must secure new registration. Texas imposes a fee of $50.75 on the registration, and various counties impose additional fees ranging from $10.00 to $31.50.

50.     Every vehicle in Texas must pass a yearly inspection (which must be proved prior to registration) for safety and, in some counties, for emissions, which range from $7.50 to $14.25.

51.     When a vehicle is damaged, resulting in a total-loss, the valid registration and inspection on the vehicle is terminated. When insureds replace their total loss vehicles from a dealer, they must pay new Registration Fees rather than transferring the (now void) registration and inspection confirmations from the total-loss vehicle, the amounts of which are the previously-mentioned flat rates imposed by state and county depending on location. When insureds replace their total loss vehicles from a non-dealer private citizen, the insureds may pay a $2.50 fee to

transfer the existing registration paid for by the seller into the consumer's own name, if the car is properly registered (otherwise, the consumer must pay the previously-mentioned Registration Fees to register and inspect the vehicle).

52.     Many insurers, including State Farm, pay the Registration Fees on Texas first-party total loss claims because such fees are in fact part of the replacement cost on a total loss vehicle. GEICO pays no amounts for registration fees in violation of the Policies.

**D.     Plaintiffs' Total Loss Claims.**

   **i.     Plaintiff Brown.**

53.     Plaintiff Steven Brown insured his 2016 Toyota Tacoma SR5 under a Policy issued by GEICO Indemnity.

54.     On or about July 16, 2018, Plaintiff Brown's insured vehicle was involved in a collision, after which he filed a claim for property damage with GEICO Indemnity, claim number 0345758350101173-01.

55.     GEICO Indemnity determined that the vehicle was a total loss with an adjusted vehicle value of $21,731.95.  The adjusted vehicle value was based on the cost to purchase a replacement vehicle (but not including mandatory fees such as sales tax, Title Fees, and Registration Fees).

56.     GEICO Indemnity issued payment on Plaintiff Brown's claim of $21,264.95, which included Title Fees of $33.00, and a subtracted deductible of $500.00, for a total of $21.264.95.

57.     GEICO Indemnity breached the Policy by not including any amount for replacement costs of sales tax or Registration Fees in its ACV payment.

58.     GEICO Indemnity thus did not pay Plaintiff Brown the full ACV of his insured vehicle.

59.     Plaintiff Brown did not receive what he bargained for and what was owed due to the total loss of the insured vehicle.

60.     GEICO Indemnity's underpayment constituted a breach of the insurance contract.

61.     Plaintiff Brown paid all premiums owed and otherwise satisfied all conditions precedent such that the insurance policy was in effect and operational at the time of the collision.

       **ii.    Plaintiff Angell.**

62.     Plaintiff Angell insured a 2015 Lexus RC 350 under the Policy issued by GEICO Advantage.

63.     On or about August 27, 2017, Plaintiff Angell's insured vehicle was involved in a collision, after which Plaintiff Angell filed a claim for property damage with GEICO, claim number 0486329120101023-01.

64.     GEICO determined that Plaintiff Angell's insured vehicle was a total loss with an adjusted vehicle value of $40,580.00.   The adjusted vehicle value was based on the cost to purchase a replacement vehicle (but not including mandatory fees such as sales tax, Title Fees, and Registration Fees).

65.     GEICO Advantage added and included in its payment $2289.75 in sales tax and $33.00 in Title Fees, while subtracting the deductible of $500.00, for a total of $42,402.75.

66.     GEICO Advantage did not include any amount for Registration Fees in making the ACV payment to Plaintiff Angell, notwithstanding that Registration Fees are reasonably necessary to replace a vehicle in Texas. GEICO Advantage also underpaid sales tax, because the adjusted vehicle value ($40,580.00) X the sales tax rate (6.25%) equals $2536.25, yet GEICO only paid $2289.75 in sales tax.

67.     By not paying the full ACV of the insured vehicle, GEICO Advantage breached its contract with Plaintiff Angell.

68.     Plaintiff Angell paid all premiums owed and otherwise satisfied all conditions precedent such that the insurance policy was in effect and operational at the time of the collision.

69.     Plaintiff Angell also insured a 2007 Lexus Rx 350 under the Policy issued by GEICO Advantage.

70.     On or about August 27, 2017, Plaintiff Angell's insured vehicle was involved in an accident, after which Plaintiff Angell filed a claim for property damage with GEICO, claim number 0486329120101015-01.

71.     GEICO determined that Plaintiff Angell's insured vehicle was a total loss with an adjusted vehicle value of $14,395.00.   The adjusted vehicle value was based on the cost to purchase a replacement vehicle (but not including mandatory fees such as sales tax, Title Fees, and Registration Fees).

72.     GEICO Advantage added and included in its payment $889.69 in sales tax and $33.00 in Title Fees, while subtracting the deductible of $500.00, for a total of $14,827.69.

73.     GEICO Advantage did not include any amount for Registration Fees in making the ACV payment to Plaintiff Angell, notwithstanding that Registration Fees are reasonably necessary to replace a vehicle in Texas.

74.     By not paying the full ACV of the insured vehicle, GEICO Advantage breached its contract with Plaintiff Angell.

75.     Plaintiff Angell paid all premiums owed and otherwise satisfied all conditions precedent such that the insurance policy was in effect and operational at the time of the collision

### iii.    Plaintiff Beck.

76.    Plaintiff Beck insured a 2015 Ford Escape under the policy issued by Government Employees.

77.    On or about August 29, 2017, Plaintiff Beck's insured vehicle was involved in a collision, after which Ms. Beck filed a claim for property damage, claim number 0362137210101061-01.

78.    GEICO determined that the vehicle was a total loss with an adjusted vehicle value of $12,445.00. The adjusted vehicle value was based on the cost to purchase a replacement vehicle (but not including mandatory fees such as sales tax, Title Fees, and Registration Fees).

79.    Government Employees then added sales tax of $777.81 and Title Fees $33.00, while subtracting the deductible of $500.00, for a total of $12,755.81.

80.    Government Employees did not include any amount for Registration Fees in making the ACV payment to Plaintiff Beck, notwithstanding that Registration Fees are reasonably necessary to replace a vehicle in Texas.

81.    By not paying the full ACV of the insured vehicle, Government Employees breached its contract with Plaintiff Beck.

82.    Plaintiff Beck paid all premiums owed and otherwise satisfied all conditions precedent such that the insurance policy was in effect and operational at the time of the collision.

### iv.    Plaintiff Morris.

83.    Plaintiff Morris insured a 2007 BMW 550I under the policy issued by GEICO County.

84.    On or about August 14, 2016, the insured vehicle was involved in a collision, after which Plaintiff Morris filed a claim for property damage, claim number 055430122-0101-051.

85.     Following the filing of said claim, GEICO determined that the vehicle was a total loss with an adjusted vehicle value of $9,212.00. The adjusted vehicle value was based on the cost to purchase a replacement vehicle (but not including mandatory fees such as sales tax, Title Fees, and Registration Fees).

86.     GEICO County then added sales tax of $575.75 and Title Fees $33.00, while subtracting the deductible of $501.00, for a total of $9,319.75.

87.     However, GEICO County did not include any amount for Registration Fees in making the ACV payment to Plaintiff Morris, notwithstanding that Registration Fees are reasonably necessary to replace a vehicle in Texas.

88.     By not paying the full ACV of the insured vehicle, GEICO County breached its contract with Plaintiff Morris.

89.     Plaintiff Morris paid all premiums owed and otherwise satisfied all conditions precedent such that the insurance policy was in effect and operational at the time of the collision.

                        **v.     Plaintiff Burnham.**

90.     Plaintiff Burnham insured a 2012 Chevrolet Cruze LS under the policy issued by GEICO Choice.

91.     On or about April 21, 2017, Plaintiff Burnham's insured vehicle was involved in a collision, after which Plaintiff Burnham filed a claim for property damage, claim number 0274966150101054-01.

92.     GEICO determined that the vehicle was a total loss with an adjusted vehicle value of $9,026.50. The adjusted vehicle value was based on the cost to purchase a replacement vehicle (but not including mandatory fees such as sales tax, Title Fees, and Registration Fees).

93.     GEICO Choice then added sales tax of $564.16 and Title Fees $33.00, while subtracting the deductible of $500.00, for a total of $9,123.66.

94.     However, GEICO Choice did not include any amount for Registration Fees in making the ACV payment to Plaintiff Burnham, notwithstanding that Registration Fees are reasonably necessary to replace a vehicle in Texas.

95.     By not paying the full ACV of the insured vehicle, GEICO Choice breached its contract with Plaintiff Burnham.

96.     Plaintiff Burnham paid all premiums owed and otherwise satisfied all conditions precedent such that the insurance policy was in effect and operational at the time of the collision.

97.     GEICO's practices and procedures are to not pay all of sales tax, Title Fees, and Registration Fees on Texas first-party total loss claims.

98.     The aforementioned breaches of contract triggers an obligation by Defendants to pay 18% interest on all unpaid amounts paid on the claim under Section 542 of the Texas Insurance Code, plus attorneys' fees.

## CLASS ALLEGATIONS

99.     Plaintiffs bring this action seeking representation of the below-defined class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

100.    Plaintiffs are members of and seek to represent the following class ("Class"):

> All insureds, under any Texas policy issued by GEICO with the same material operative policy language covering a vehicle with auto physical damage coverage, who 1) made a first-party auto property damage claim during the time period of 4 years prior to the filing of this Complaint to the date on which an Order certifying the class is entered, 2) where such vehicle was declared a total loss, 3) whose claim was adjusted as a total loss, and 4) where the total loss payment was for an amount less than the adjusted vehicle value, plus sales tax calculated as the applicable percentage of the adjusted vehicle value, applicable Title Fees, and applicable Registration Fees, less any applicable deductible and salvage-retained value.

101.    Plaintiffs are members of the Class, because a) each Plaintiff made a claim under a Texas Policy issued by the respective GEICO defendant, all of which contained the same operative policy language and which included auto physical damage coverage, b) each Plaintiff made a first-party claim during the relevant time period, c) each Plaintiff's vehicle was declared to be and adjusted as a total loss, and d) each Plaintiff received a total-loss payment for less than the adjusted vehicle value, plus sales tax on the adjusted vehicle value, applicable Title Fees, and applicable Registration Fees, less applicable deductible and salvage-retained value.

102.    **Numerosity**: Although the precise number of members of the class are unknown to Plaintiffs at this time and can only be determined through appropriate discovery, Plaintiffs believe that because GEICO (and each Defendant individually) are large motor vehicle insurers in the State of Texas and write tens of millions of dollars of annual physical damage coverage premiums, the class of persons affected by Defendants' unlawful practice consists of tens of thousands of Class members (and thousands of class members for each Defendant. The Class for each Defendant is so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by GEICO pursuant to standardized insurance policy language, and results in the retention by GEICO of insurance benefits and monies properly owed to Plaintiffs and the Class Members. Thus, numerosity under Rule 23(a)(1) is established.

103.    **Commonality**: Plaintiffs' claims raise questions of law and fact common to all members of the Classes under Rule 23(a)(2). Said common questions include, but are not limited to, the following: (a) whether, under Defendants' standardized policy language, Plaintiffs and the Class Members are owed full sales tax and Registration Fees necessary to replace a total-loss insured vehicle; (b) whether such amounts are elements of ACV, defined as the "replacement cost"

less depreciation/betterment of the insured vehicles; and (c) whether GEICO breached its insurance contracts with the Plaintiffs and every member of the Class by failing to pay such amounts.

104.    The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for class-wide adjudication. GEICO and all members of the Class are bound by materially identical policy terms.

105.    **Typicality**: Plaintiffs' claims are typical to those of members of the respective Classes under the meaning of Rule 23(a)(3) because members of the Class are similarly affected by GEICO's failure to pay full ACV of the insured vehicles. The material and relevant policy terms for each Class Member are substantially identical to the terms of Plaintiffs' policies. Plaintiffs' claims are not unique from those of the members of the Class, nor are they subject to unique affirmative defenses. By pressing their own claims, Plaintiffs necessarily press the substantively-identical claims of Class Members.

106.    Plaintiffs' claims are typical of the claims of all Class Members because all such claims arise from the allegedly improper failure by Defendant to pay all of sales tax, Title Fees, and Registration Fees upon the total loss of insured vehicles. Plaintiffs and Class Members were injured through Defendants' uniform misconduct. Plaintiffs' claims are based upon the same legal theories as those of the Class Members. Plaintiffs suffered the same harm as all the other Class Members: the coverage for sales tax and regulatory fees that Defendants failed to pay its insureds.

107.    **Adequacy**: Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the class, pursuant to Rule 23(a)(4). Plaintiffs do not possess any interest adverse to those of the Class Members. Plaintiffs are committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting and

defending class actions. Plaintiffs are committed to zealously protecting the interests of the members of the respective Classes.

108.    Plaintiffs' counsel are also adequate representatives under the meaning of Rule 23(a)(4). The undersigned counsel collectively litigated thousands of first-party insurance claims under the Texas Insurance Code.  Plaintiffs' counsel also associated other counsel (who intend to apply for admission *pro hac vice*) who successfully litigated class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax, Title Fees, and/or Registration Fees.

109.    **Superiority**: Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining individual actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

110.    The issues related to Plaintiffs' claims do not vary from the issues relating to the claims of the other Class Members, such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

111.    Certification of the above class is also supported by the following considerations:

    a.    The relatively small amount of damages that members of the class have suffered on an individual basis would not justify the prosecution of separate lawsuits;

b.  Counsel in this class action is not aware of any previously filed litigation against the Defendants in which any of the members of the class are a party and where any question of law or fact in the subject action can be adjudicated; and

c.  No difficulties would be encountered in the management of the claim on a class action basis, because the class is readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

105.  **Predominance**: Rule 23(b)(3)'s predominance requirement is also met because the previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. Resolution of the common questions in this litigation will resolve virtually all substantive questions critical to individual class member claims in a single stroke. Whether the materially-identical Policy language requires payment of sales tax, Title Fees, and/or Registration Fees is the dispositive question in this litigation, the answer to which is the same for all Class Members.

106.  While damages for individual Class Members may be in different numerical amounts,[3] the measure of damages is the same for all members of Class and for Plaintiffs, the application of which is a purely ministerial matter.

### COUNT I: Claim for Breach of Contract Against GEICO Indemnity (brought by Plaintiff Brown on behalf of GEICO Indemnity Insureds)

107.  All allegations in paragraphs Nos. 1 - 106 are incorporated in this Count I by reference.

108.  This count is brought by Plaintiff Brown, individually and on behalf of the Class of persons whose total loss claims were insured by GEICO Indemnity ("GEICO Indemnity Class Members").

---

[3] This is because, taking Sales Tax as an example, 6.25% of 2017 Ferrari is likely a higher amount than 6.25% of a 1990 Honda.

109.     Plaintiff Brown was party to an insurance contract with GEICO Indemnity as described herein. All GEICO Indemnity Class Members were parties to an insurance contract with GEICO Indemnity containing materially identical terms.

110.     The interpretation of Plaintiff Brown and all GEICO Indemnity Class Members' insurance Policies is governed by Texas law.

111.     Plaintiff Brown and all GEICO Indemnity Class Members made a claim determined by GEICO Indemnity to be a first-party total loss under the insurance policy, and determined to be a covered claim.

112.     By paying the total loss claims, GEICO Indemnity determined that Plaintiff Brown and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the Policies for each insured to be paid on his or her total loss.

113.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff Brown and every GEICO Indemnity Class Member were owed the ACV of the vehicle, which is the adjusted vehicle value, sales tax calculated as a percentage of the full adjusted vehicle value, applicable Title Fees (depending on their readily-identifiable location), applicable Registration Fees (depending on their readily-identifiable location), minus any applicable deductible and salvage-retained value.

114.     GEICO Indemnity failed to pay the aforementioned amount to Plaintiff Brown and failed to pay the aforementioned amount to every GEICO Indemnity Class Member. At minimum, GEICO Indemnity failed to pay any Registration Fees at all, and thus necessarily failed to pay the required amount for that reason alone. In some cases, GEICO Indemnity also failed to pay sales tax calculated as the applicable sales tax rate as a percentage of the full adjusted vehicle value and Title Fees.

115.    GEICO Indemnity's failure to provide coverage for the full ACV of insured vehicles constitutes a material breach of contract with Plaintiff Brown and every GEICO Indemnity Class Member.

116.    As a result of said breaches, Plaintiff Brown and the GEICO Indemnity Class Members are entitled under the Policy to sums representing the benefits owed for the full ACV of the insured vehicle (offset by partial amount already paid), as well as costs, prejudgment and post judgment interest, injunctive and/or declaratory relief and other relief as is appropriate.

117.    In addition, Plaintiff Brown and GEICO Indemnity Class Members are entitled to an award of attorneys' fees and costs.

**COUNT II: Claim for Breach of Contract Against GEICO Advantage**
**(brought by Plaintiff Angell on behalf of GEICO Advantage Insureds)**

118.    All allegations in paragraphs Nos. 1 - 106 are incorporated into this Count II by reference.

119.    This count is brought by Plaintiff Angell, individually and on behalf of the Class of persons whose total loss claims were insured by GEICO Advantage (GEICO Advantage Class Members).

120.    Plaintiff Angell was party to an insurance contract with GEICO Advantage as described herein. All GEICO Advantage Class Members were parties to an insurance contract with GEICO Advantage containing materially identical terms.

121.    The interpretation of Plaintiff Angell and all GEICO Advantage Class Members' insurance Policies is governed by Texas law.

122.    Plaintiff Angell and all GEICO Advantage Class Members made a claim determined by GEICO Advantage to be a first-party total loss under the insurance policy, and determined to be a covered claim.

123. By paying the total loss claims, GEICO Advantage determined that Plaintiff Angell and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the Policies for each insured to be paid on his or her total loss.

124. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff Angell and every GEICO Advantage Class Member were owed the ACV of the vehicle, which is the adjusted vehicle value, sales tax calculated as a percentage of the full adjusted vehicle value, applicable Title Fees (depending on their readily-identifiable location), applicable Registration Fees (depending on their readily-identifiable location), minus any applicable deductible and salvage-retained value.

125. GEICO Advantage failed to pay the aforementioned amount to Plaintiff Angell and failed to pay the aforementioned amount to every GEICO Advantage Class Member. At minimum, GEICO Advantage failed to pay any Registration Fees at all, and thus necessarily failed to pay the required amount for that reason alone. In some cases, GEICO Advantage also failed to pay sales tax calculated as the applicable sales tax rate as a percentage of the full adjusted vehicle value and Title Fees.

126. GEICO Advantage's failure to provide coverage for the full ACV of insured vehicles constitutes a material breach of contract with Plaintiff Angell and every GEICO Advantage Class Member.

127. As a result of said breaches, Plaintiff Angell and the GEICO Advantage Class Members are entitled under the Policy to sums representing the benefits owed for the full ACV of the insured vehicle (offset by partial amount already paid), as well as costs, prejudgment and post judgment interest, injunctive and/or declaratory relief and other relief as is appropriate.

128.    In addition, Plaintiff Angell and GEICO Advantage Class Members are entitled to an award of attorneys' fees and costs.

**COUNT III: Claim for Breach of Contract Against Government Employees**
**(brought by Plaintiff Beck on behalf of Government Employees Insureds)**

129.    The allegations in paragraphs Nos. 1 - 106 are incorporated into this Count III by reference.

130.    This count is brought by Plaintiff Beck, individually and on behalf of the Class of persons whose total loss claims were insured by Government Employees (Government Employees Class Members).

131.    Plaintiff Beck was party to an insurance contract with Government Employees. All Government Employees Class Members were parties to an insurance contract with Government Employees containing materially identical terms.

132.    The interpretation of Plaintiff Beck and all Government Employees Class Members' insurance Policies is governed by Texas law.

133.    Plaintiff Beck and all Government Employees Class Members made a claim determined to be a first-party total loss under the insurance policy, and determined to be a covered claim.

134.    By paying the total loss claims, Government Employees determined that Plaintiff Beck and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the Policies for each insured to be paid on his or her total loss.

135.    Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff Beck and every Government Employees Class Member were owed the ACV of the vehicle, which is the adjusted vehicle value, sales tax calculated as a percentage of the full adjusted vehicle value, applicable Title Fees (depending on their readily-identifiable

location), applicable Registration Fees (depending on their readily-identifiable location), minus any applicable deductible and salvage-retained value.

136.     Government Employees failed to pay the aforementioned amount to Plaintiff Beck and failed to pay the aforementioned amount to every Government Employees Class Member. At minimum, Government Employees failed to pay any Registration Fees at all, and thus necessarily failed to pay the required amount for that reason alone. In some cases, Government Employees also failed to pay sales tax calculated as the applicable sales tax rate as a percentage of the full adjusted vehicle value and Title Fees.

137.     Government Employees' failure to provide coverage for the full ACV of insured vehicles constitutes a material breach of contract with Plaintiff Beck and every Government Employees Class Member.

138.     As a result of said breaches, Plaintiff Beck and the Government Employees Class Members are entitled under the Policy to sums representing the benefits owed for the full ACV of the insured vehicle (offset by partial amount already paid), as well as costs, prejudgment and post judgment interest, injunctive and/or declaratory relief and other relief as is appropriate.

139.     In addition, Plaintiff Beck and Government Employees Class Members are entitled to an award of attorneys' fees and costs.

### COUNT IV: Claim for Breach of Contract Against GEICO County
### (brought by Plaintiff Morris on behalf of GEICO County Insureds)

140.     The allegations in paragraphs Nos. 1 - 106 are incorporated into this Count IV by reference.

141.     This count is brought by Plaintiff Morris, individually and on behalf of the Class of persons whose total loss claims were insured by GEICO County (GEICO County Class Members).

142.    Plaintiff Morris was party to an insurance contract with GEICO Advantage as described herein. All GEICO County Class Members were parties to an insurance contract with GEICO County containing materially identical terms.

143.    The interpretation of Plaintiff Morris and all GEICO County Class Members' insurance Policies is governed by Texas law.

144.    Plaintiff Morris and all GEICO County Class Members made a claim determined to be a first-party total loss under the insurance policy, and determined to be a covered claim.

145.    By paying the total loss claims, GEICO County determined that Plaintiff Morris and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the Policies for each insured to be paid on his or her total loss.

146.    Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff Morris and every GEICO County Class Member were owed the ACV of the vehicle, which is the adjusted vehicle value, sales tax calculated as a percentage of the full adjusted vehicle value, applicable Title Fees (depending on their readily-identifiable location), applicable Registration Fees (depending on their readily-identifiable location), minus any applicable deductible and salvage-retained value.

147.    GEICO County failed to pay the aforementioned amount to Plaintiff Morris and failed to pay the aforementioned amount to every GEICO County Class Member. At minimum, GEICO County failed to pay any Registration Fees at all, and thus necessarily failed to pay the required amount for that reason alone. In some cases, GEICO County also failed to pay sales tax calculated as the applicable sales tax rate as a percentage of the full adjusted vehicle value, and Title Fees.

148.     GEICO County's failure to provide coverage for the full ACV of insured vehicles constitutes a material breach of contract with Plaintiff Morris and every GEICO County Class Member.

149.     As a result of said breaches, Plaintiff Morris and the GEICO County Class Members are entitled under the Policy to sums representing the benefits owed for the full ACV of the insured vehicle (offset by partial amount already paid), as well as costs, prejudgment and post judgment interest, injunctive and/or declaratory relief and other relief as is appropriate.

150.     In addition, Plaintiff Morris and GEICO County Class Members are entitled to an award of attorneys' fees and costs.

**COUNT V: Claim for Breach of Contract Against GEICO Choice**
**(brought by Plaintiff Burnham on behalf of GEICO Choice Insureds)**

151.     The allegations in paragraphs Nos. 1 - 106 are incorporated into this Count V by reference.

152.     This count is brought by Plaintiff Burnham, individually and on behalf of the Class of persons whose total loss claims were insured by GEICO Choice (GEICO Choice Class Members).

153.     Plaintiff Burnham was party to an insurance contract with GEICO Choice as described herein. All GEICO Choice Class Members were parties to an insurance contract with GEICO Choice containing materially identical terms.

154.     The interpretation of Plaintiff Burnham and all GEICO Choice Class Members' insurance Policies is governed by Texas law.

155.     Plaintiff Burnham and all GEICO Choice Class Members made a claim determined to be a first-party total loss under the insurance policy, and determined to be a covered claim.

156.    By paying the total loss claims, GEICO Choice determined that Plaintiff Burnham and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the Policies for each insured to be paid on his or her total loss.

157.    Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff Burnham and every GEICO Choice Class Member were owed the ACV of the vehicle, which is the adjusted vehicle value, sales tax calculated as a percentage of the full adjusted vehicle value, applicable Title Fees (depending on their readily-identifiable location), applicable Registration Fees (depending on their readily-identifiable location), minus any applicable deductible and salvage-retained value.

158.    GEICO Choice failed to pay the aforementioned amount to Plaintiff Burnham and failed to pay the aforementioned amount to every GEICO Choice Class Member. At minimum, GEICO Choice failed to pay any Registration Fees at all, and thus necessarily failed to pay the required amount for that reason alone. In some cases, GEICO Choice also failed to pay sales tax calculated as the applicable sales tax rate as a percentage of the full adjusted vehicle value and Title Fees.

159.    GEICO Choice's failure to provide coverage for the full ACV of insured vehicles constitutes a material breach of contract with Plaintiff Burnham and every GEICO Choice Class Member.

160.    As a result of said breaches, Plaintiff Burnham and the GEICO Choice Class Members are entitled under the Policy to sums representing the benefits owed for the full ACV of the insured vehicle (offset by partial amount already paid), as well as costs, prejudgment and post judgment interest, injunctive and/or declaratory relief and other relief as is appropriate.

161.    In addition, Plaintiff Burnham and GEICO Choice Class Members are entitled to an award of attorneys' fees and costs.

### COUNT VI: Violation of Prompt Payment of Claims Statute
### (brought by All Plaintiffs on behalf of all Class Members)

162.    The allegations in paragraphs Nos. 1 - 106 are incorporated into this Count VI by reference.

163.    The failure by GEICO to pay the full amount owed and/or to follow the statutory time guidelines for paying claims as set forth herein constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code.

164.    Plaintiffs and all other Class Members, therefore, in addition to the claim for damages, are entitled to 18% interest and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of the Class, demands a trial by jury on all triable issues and seek and pray for relief and judgment as follows:

a) For an Order certifying this action as a Class Action on behalf of the Class described above, and appointing Plaintiffs as class representatives of the Class and the undersigned counsel as Class Counsel;

b) For an award of compensatory damages in amounts owed under the Policies;

c) For injunctive relief to prevent continuation of this illegal practice and for other injunctive relief as is proven appropriate in this matter;

d)  For all other damages according to proof;

e) 18% interest on all amounts owed pursuant to Tex. Ins. Code 542.051 *et seq.*;

f) For an award of attorneys' fees and expenses as appropriate pursuant to applicable law, including Tex. Civ. Prac. & Rem. Code § 38.001, and Tex. Ins. Code 542.051 *et seq.*;

g) For costs of suit incurred herein;

h) For pre and post judgment interests on any amounts awarded;

i) For other and further forms of relief as this Court deems just and proper.

Dated this 5<u>th</u> day of March, 2020.

Respectfully submitted,

*/s/ Richard Daly*
Richard Daly
Attorney-in-charge
Texas Bar Number: 00796429
SDTX Federal ID No.: 718307
John Scott Black
Texas Bar Number: 24012292
DALY & BLACK, P.C.
2211 Norfolk St., Ste. 800
Houston, TX, 77098
T: (713) 655-1405
F: (713) 655-1587
ecfs@dalyblack.com
rdaly@dalyblack.com
jblack@dalyblack.com

Angelica Gentile, Esq.
Texas Bar Number: 24112322
SHAMIS & GENTILE
14 NE 1 st Avenue, Suite 1205
Miami, FL, 33132
305.479.2299
agentile@shamisgentile.com

Edmund A. Normand, Esq.**
Florida Bar Number: 865590
Jacob L. Phillips, Esq.**

Florida Bar Number: 0120130
Normand PLLC
Post Office Box 1400036
Orlando, FL 32814-0036
407.603.6031
firm@ednormand.com
ed@ednormand.com
jacob.phillips@normandpllc.com

Scott Edelsberg, Esq.**
Florida Bar Number: 0100537
EDELSBERG LAW
19495 Biscayne Blvd #607
Aventura, FL, 33180
scott@edelsberglaw.com

Christopher B. Hall**
Georgia Bar Number: 318380
Hall & Lampros, LLP
400 Galleria Parkway, Suite 1150
Atlanta, GA 30339
Telephone: (404) 876-8100
Facsimile: (404) 876-3477
chall@hallandlampros.com

Bradley W. Pratt**
Florida Bar No. 0094300
Pratt Clay LLC
4401 Northside Parkway, Suite 520
Atlanta, GA 30327
Telephone: (404) 949-8118
Facsimile: (404) 949-8159
bradley@prattclay.com

**pro hac vice forthcoming*

**Attorneys for Plaintiffs**