United States District Court
Southern District of Texas
**ENTERED**
November 30, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANGELL et al, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:20-CV-0799 |
| § | |
| GEICO ADVANTAGE INSURANCE § | |
| COMPANY et al, § | |
| § | |
| Defendants. | |

## MEMORANDUM & ORDER

The Court held a hearing on Plaintiff's Motion for Class Certification (Doc. 58) on October 28, 2021. At that hearing, the Court **GRANTED** Plaintiff's Motion. The Court provides this Memorandum & Order to further document its rulings and reasoning.

### I.   FACTUAL BACKGROUND

This case concerns an alleged breach of the Texas private passenger auto insurance policy issued by defendants GEICO Advantage, GEICO Indemnity, Government Employees, GEICO County, or GEICO Choice (collectively, "GEICO"). (Doc. 58-1 at 9). The contested policy term states that GEICO will pay automobile insurance policy holders for direct and accidental loss to a covered vehicle. (*Id.*) However, GEICO limits its liability for loss to the vehicle's Actual Cash Value (ACV), which is defined in Texas as "the replacement cost of the auto . . . less depreciation." (*Id.* at 10).

Plaintiffs and all putative class members possessed coverage under uniform policy provisions entitling them to the "replacement cost . . . less depreciation" of their vehicles. (Doc. 51 at 2). Plaintiffs claim that GEICO underpaid ACV by systematically withholding mandatory

1

fees[1] and sales tax[2] for vehicles leased before an August 2020 change in policy. (Doc. 58-5 at 23).

Lead plaintiffs are Philip Angell, Steven Brown, Tonnie Beck, Tammy Morris, and Dawn Burnham; all five were parties to a contract with GEICO, and all claim they did not receive full ACV for their total loss vehicles. Plaintiff Brown did not receive any reimbursement for sales tax, and none of the lead plaintiffs received any reimbursement for registration fees. All lead plaintiffs received title fees.

At this juncture, plaintiffs seek class certification for a class defined in the following way:

> All insureds, under any Texas policy issued by GEICO with the same material operative policy language covering a vehicle with auto physical damage coverage, who 1) made a first-party auto property damage claim during the time period of 4 years prior to the filing of this Complaint to the date on which an Order certifying the class is entered, 2) where such vehicle was declared a total loss, 3) whose claim was adjusted as a total loss, and 4) where the total loss payment was for an amount less than the adjusted vehicle value, plus sales tax calculated as the applicable percentage of the adjusted vehicle value, applicable Title Fees, and applicable Registration Fees, less any applicable deductible and salvage-retained value.

**II.    DISCUSSION**

    **A.    Article III Standing**

As the Supreme Court explained in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992), the elements of Article III standing are constant throughout litigation: injury in fact, the injury's traceability to the defendant's conduct, and the potential for the injury to be redressed by the relief requested. *See also In re Deepwater Horizon*, 739 F.3d 790, 799 (5th Cir. 2014). At the class certification phase, circuits have applied one of two tests when analyzing the standing of an entire class: the *Kohen* test or the slightly more exacting *Denney* test. *Id.* at 801-02.

---

[1] Registration fees and title fees together constitute mandatory fees.
[2] Sales tax in Texas is 6.25% of the underlying base vehicle value at the time of loss. Tex. Transp. Code §§ 152.021(a)-(b).

The capacious *Kohen* test points out that it is "almost inevitable" that "a class will ... include persons who have not been injured by the defendant's conduct[ ] ... because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown." *Kohen v. Pacific Investment Management Co. LLC,* 571 F.3d 672, 677 (7th Cir.2009). According to *Kohen*, however, this "inevitability" does not preclude Article III standing during the Rule 23 stage. *Id*. As such, *Kohen* focuses its Article III inquiry on named plaintiffs only.

The slightly less permissive *Denney* test scrutinizes the class definition to make sure that no class members lack Article III standing. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir.2006). However, *Denney* does not require that each member of a class submit evidence of individual standing. *Id*.

This Court need not spend time deciding which of the two tests to apply, since the lead plaintiffs and class members in this matter meet standing requirements in either case.

Looking first to the *Kohen* test for standing, we focus our attention on the named plaintiffs: Brown, Angell, Beck, Morris, and Burnham. All allege underpayment of ACV. All five named plaintiffs allegedlydid not receive registration fees, and plaintiff Brown did not receive sales tax for his leased vehicle. Each one of these named plaintiffs satisfies the elements of standing by identifying an injury-in-fact that is traceable to GEICO'S alleged breach of contract. And their injuries are susceptible to redress by an award of monetary damages. Under the *Kohen* test, that is the end of the inquiry.

It does not matter at this juncture that plaintiffs only allege injury instead of proving it. As explained in *Cole v. General Motors Corp.,* 484 F.3d 717 (5th Cir.2007), which addressed the Article III standing of named plaintiffs during class certification under Rule 23, the Fifth Circuit

3

found it "sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they *allege* they have suffered." At the Rule 23 stage, *Cole* provides that "a federal court must assume *arguendo* the merits of [each named plaintiff's] legal claim."[1] *Id*. at 723. Accordingly, there is no question that the *Kohen* test is satisfied in this case.

Applying the *Denney* test to the definition of the class proposed for certification, we come to the same conclusion. The class definition's terms specifically limit the class to GEICO policyholders in Texas who were allegedly underpaid for total losses of their vehicles because of GEICO's breach of identical and material policy language. (Doc. 27 at ¶ 103). As contemplated by the class definition, therefore, the class includes only persons and entities that possess Article III standing.[3] There is no requirement that each class member produce evidence of standing. *Denney,* 443 F.3d at 263-64.

In its objections to plaintiffs' and class members' standing, GEICO confuses Article III standing with Rule 23 typicality. GEICO asserts, citing *Wright v. Cas. Co.,* No. 20-00823-BAJ-SDJ, 2021 WL 4429190 (M.D. La. Sept. 27, 2021), that those lead plaintiffs who received sales tax or mandatory fees from GEICO lack standing to represent class members who did not receive the same. (Doc. 68 at 1). And indeed, at first glance, it appears that the *Wright* court endorsed GEICO's position when it held that, because the plaintiff in that case did ". . .not allege that GEICO failed to pay sales tax in connection with her total loss claim, she [did] not have standing to bring a claim for damages for sales tax, even on behalf of a class." *Wright*, 2021 WL 4429190 at *5. But *Wright* is not instructive here for several reasons.

---

[3] To the extent that defendant pointed out technical deficiencies in the class definition, those should be resolved by adjusting the class definition to include only those who submitted claims "pursuant to comprehensive or collision coverage" (excluding uninsured motorist coverage claims) and were "determined to be a covered total loss" (excluding claims for which coverage was denied).

First, it is worth noting that *Wright* is merely persuasive authority, and is further diminished because it conflicts with higher authority. The Supreme Court noted that "[t]he propriety of class-wide relief ... does not require a demonstration that some or all of the unnamed class could themselves satisfy the standing requirements for named plaintiffs." *Lewis v. Casey,* 518 U.S. 343, 395 (1996) (Souter, J., concurring in part and dissenting in part) (citing 1 H. NEWBERG & A. CONTE , *Newberg on Class Actions,* § 2.07, at 2–40 to 2–41 (3d ed. 1992) ("Whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends on meeting the prerequisites of Rule 23 governing class actions.")).

Second, plaintiffs in the *Wright* case did not oppose defendants' argument that plaintiff needed to suffer sales tax loss in order to bring a claim for damages for sales tax on behalf of a class. *Wright*, 2021 WL 4429190 at * 5. The *Wright* court seems to have found plaintiffs' lack of opposition semi-dispositive, as the Court reiterated the lack of opposition twice in its very brief Article III discussion. *Id.* Here, plaintiffs' clear opposition has forced a more thorough engagement with the merits of GEICO's Article III opposition.

In summary, Article III is not concerned with the nature of a plaintiff's injury-in-fact, so long as such injury stems from a specific breach by defendant. Here, we have an alleged breach—GEICO's failure to pay out the full amount of ACV. And we have alleged injuries in fact—(1) underpayment of sales tax/and or mandatory fees, or (2) failure to receive the benefit of their bargain in the case of plaintiffs who managed to receive payment through alternate means. And all alleged injuries are redressable by the relief plaintiffs request, namely monetary damages. Further, the plaintiff class is ascertainable with reference to objective criteria. *See Union Asset Mgmt.*

5

*Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 639-40 (5th Cir. 2021). Therefore, this Court finds that plaintiffs have met the requirements for Article III Standing.

### B. Rule 23(a)

GEICO's core Rule 23 argument is that lead plaintiffs—by alleging a general underpayment of ACV yet only advancing claims regarding mandatory fees and sales tax—do a disservice to class members who may wish to advance claims regarding underpayment of other components of ACV. (Doc. 63 at 15). This allegation forms the basis of GEICO's arguments against plaintiffs' adequacy, commonality, and typicality. (*Id*. at 12-17).

The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Adequacy encompasses three separate but related inquiries (1) 'the zeal and competence of the representative[s'] counsel'; (2) 'the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees'; and (3) the risk of 'conflicts of interest between the named plaintiffs and the class they seek to represent.' " *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (citing *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005)). Throughout litigation, the court "must continue carefully to scrutinize the adequacy of representation and withdraw certification if such representation is not furnished." *Grigsby v. N. Miss. Med. Center, Inc.*, 586 F.2d 457, 462 (5th Cir. 1978).

GEICO calls into question the third prong of the adequacy inquiry: namely, lead plaintiffs' possible conflicts of interest with the class they seek to represent. (Doc. 63 at 20). GEICO first points out that there are several components of ACV that plaintiffs neglect when they choose only to advance claims of (1) underpayment of sales tax and (2) mandatory fees.

6

(*Id.*) Specifically, GEICO says that plaintiffs' waiver of claims relating to the sufficiency of the adjusted vehicle value undermines adequacy in this matter. (*Id.*; *see* Doc. 27 at ¶ 4). Indeed, when the class representative proposes waiving some of the class's claims, the decision risks creating an irreconcilable conflict of interest with the class. *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017); *see, e.g.*, *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830–31 (7th Cir. 2011) ("A representative can't throw away what could be a major component of the class's recovery.")

Of course, not all purported conflicts between a class representative and members of the class will defeat adequacy. *Slade,* 856 F.3d at 412. Instead, deciding whether a class representative's decision to forego certain claims defeats adequacy requires an inquiry into, at least: (1) the risk that unnamed class members will forfeit their right to pursue the waived claim in future litigation, (2) the value of the waived claim, and (3) the strategic value of the waiver, which can include the value of proceeding as a class (if the waiver is key to certification). *Id.* at 413. *See, e.g.*, *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (Easterbrook, J.) (weighing the value of the purportedly waived claim against the value of proceeding as a class on the un-waived claims). A class representative's decision to waive unnamed class members' claims will defeat adequacy where the lost value of the waived claims (percent risk of future preclusion multiplied by the value of the waived claim) is greater than the strategic value of the decision to waive. *Slade*, 856 F.3d at 413.

GEICO argues that, because sales tax is based on a percentage of the adjusted vehicle value, plaintiffs' sales tax claim will necessarily require the adjudication of the adjusted vehicle value; therefore any attempted subsequent action based on adjusted vehicle value will be barred by collateral estoppel. (Doc. 63 at 20). However, the Fifth Circuit in *Slade* pointed out that the

7

risk of preclusion is difficult to predict, as "courts have inconsistently applied claim preclusion to class actions." 856 F.3d at 414. Some courts have held that class actions are "one of the long-held exceptions to the rule against claim splitting." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 431–32 (4th Cir. 2003); *accord Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 429 (6th Cir. 2012) (same). Other courts have refused to certify classes because of risks of down-the-line preclusion. *See, e.g.*, *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 283 (5th Cir. 2008) (noting that "if the price of a Rule 23(b)(2) disparate treatment class both limits individual opt outs and sacrifices class members' rights to avail themselves of significant legal remedies, it is too high a price to impose").

Here, this Court concurs with *Slade's* analysis regarding the uncertainty of claim preclusion and similarly notes that the risk to unnamed class members is smaller than usual here because of the opportunity for opt outs. *See* Fed. R. Civ. P. 23(b)(3) (allowing opt outs from a Rule 23(b)(3) class). If unnamed class members think that the risk of preclusion is significant and wish to protect their claim, they may do so. *See* 7AA Charles Alan Wright et al., Fed. Prac. & Proc. § 1777 (3d ed. 2005) ("The notice requirement and the option to exclude oneself from the judgment recognize the special character of Rule 23(b)(3) classes."). And if the number of plaintiffs opting out demonstrate a significant conflict, this Court could decertify the class.

As for the value of the waived claim, GEICO argues that the adjusted vehicle value far exceeds the value of plaintiffs' class claims for sales tax and mandatory fees. (Doc. 63 at 16-17). And plaintiffs of course disagree, averring that claims about adjusted vehicle value are non-viable and value-less. (Doc. 65 at 4).

Faced with a conundrum identical to the one we now face, the *Slade* court pointed out the possible strategic value of plaintiffs' decision to waive adjusted vehicle value claims: "[i]f

8

Plaintiffs had raised challenges to both the condition adjustment and the base value calculation, Plaintiffs' class certification motion may have run into predominance problems because condition adjustments appear to be highly individualized. Perhaps recognizing this concern, Plaintiffs disclaimed any challenge to the condition adjustment." 856 F.3d at 412. Ironically, even GEICO concedes that plaintiffs would likely be unable to proceed as a class if they included adjusted vehicle value claims in their lawsuit. (*See* Doc. 63 at 17 ("Plaintiffs fail to demonstrate that liability for underpayment of the adjusted vehicle value could be determined on a class basis and courts have consistently held that they cannot be.")). It is safe to say that there is well-founded pessimism on all sides about the strategic viability of class actions alleging underestimation of adjusted vehicle value. Nevertheless, this Court points to the Rule 23(b)(3) opt-out provision as an adequate means of protecting class members who want to proceed with adjusted vehicle valuation claims.

Ultimately, an order passing on a request for class certification is subject to revision by this Court, should revision prove necessary. Fed. R. Civ. P. 23(c)(1). *See also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978) ("[A] district court's order denying or granting class status is inherently tentative.")). Counsel are also able to modify the class definition, create sub-classes, bifurcate liability and damages, and seek potential post-trial remedies should such actions prove necessary. Decertifying a Class Action, Practical Law Practice Note 2-603-7765. At this juncture, this Court finds that plaintiffs meet Rule 23(a)'s adequacy requirement, as they allege underpayment of ACV in general, while focusing specifically on mandatory fees and sales tax.

"[The] requirements [of commonality and typicality] ... tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the

9

competency of class counsel and conflicts of interest." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982). Having found that plaintiffs meet the standard for adequacy, this Court similarly finds that plaintiffs satisfy requirements for commonality and typicality. The common issue to be resolved is whether GEICO breached the form policies, underpaying ACV by withholding mandatory fees and/or leased sales tax. (Doc. 27 at 11). As explained above, it does not matter that plaintiffs fail to allege underpayment of other components of ACV. Similarly, plaintiffs meet the requirements of typicality because they, like all class members, allege underpayment of ACV notwithstanding waiver of claims GEICO believes are necessary.

### C. Rule 23(b)

A class is certifiable under Rule 23(b) where (1) common questions of law and fact predominate over individual questions and (2) class-wide litigation is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3).

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623 (1997). The question is not whether plaintiffs and class members will prevail, but rather "whether they will fail or succeed together.*" Erica P. John Fund, Inc. v. Halliburton Co*., 718 F.3d 423, 431 (5th Cir. 2013) *vacated on other grounds*, 573 U.S. 258 (2014). Predominance does not require all questions of law and fact to be common, but only that the common question(s) predominate over individual questions. *See Robinson v. Tex. Auto. Dealers Assoc*., 387 F.3d 416, 421 (5th Cir. 2004).

Here, GEICO's primary predominance objection is that individual issues relating to underpayment of adjusted vehicle value—a claim plaintiff does not here bring—would

predominate over any questions common to the class. (Doc. 63 at 17). As explained in detail above, this Court does not find at this juncture that plaintiffs must bring claims of underpayment of adjusted vehicle value as part of their ACV claim. It follows that we need not worry about the predominance of issues that have not been brought before this Court.

GEICO's remaining predominance objections are quibbles about plaintiffs' proposed methodology of calculating damages. (Doc. 63 at 18-19). However, the Fifth Circuit has long held that the absence of a common formula for measuring damages does not preclude a predominance finding if issues prior to damages are common. *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298 (5th Cir. 2001); *see also Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1239 (11th Cir. 2016) ("the 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.")(citing William B. Rubenstein, Newburg on Class Actions § 4:54 (5th ed.)). Nevertheless, the Court finds that GEICO's misgivings about plaintiffs' damages methodology seem to amount to manufactured difficulties in applying what appears to be a rather straightforward formula.

As for the superiority of class-wide litigation, this Court holds that class treatment is superior here, where (1) class claims turn on interpretation of identical form contract provisions, (2) the litigation concerns negative value suits (3) no other litigation precludes class treatment, and (4) class treatment will conserve litigation resources and avoid inconsistent results.

### D. Texas Prompt Payment of Claims Act

This Court agrees with plaintiffs that the Texas Prompt Payment of Claims Act (TTPCA) is a strict liability statute. Indeed, the Texas Supreme Court recently held "Nothing in the TPPCA would excuse an insurer from liability for TPPCA damages if it was liable under the terms of the policy but delayed payment beyond the applicable statutory deadline." *Barbara Techs.*, 589 S.W.3d

806, 819 (Tex. 2019). As such, there is no reason to distinguish between certification of the underlying breach of contract claim and the TTPCA claim.

### III. CONCLUSION

For the reasons set forth above and those stated on the record at the October 28, 2021 hearing, the Court **GRANTS** Plaintiffs' Motion for Class Certification.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 30th day of November, 2021.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE