IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PHILIP ANGELL, STEVEN BROWN, TONNIE BECK, TAMMY MORRIS, and DAWN BURNHAM, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GEICO ADVANTAGE INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO COUNTY MUTUAL INSURANCE COMPANY, and GEICO CHOICE INSURANCE COMPANY,<br><br>Defendants. | CASE NO.: 4:20-CV-00799<br><br>CLASS ACTION |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASSES**

  Plaintiffs Philip Angell, Steven Brown, Tonnie Beck, Tammy Morris, and Dawn Burnham ("Plaintiffs"), individually and on behalf of the proposed Settlement Classes, file this Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Classes. Defendants GEICO Advantage Insurance Company, GEICO Indemnity Company, Government Employees Insurance Company, GEICO County Mutual Insurance Company, and GEICO Choice Insurance Company ("Defendants" or "GEICO") do not oppose this Motion. The Settlement Agreement ("Agreement") is attached as Exhibit A.[1]

---

[1] For purposes of this memorandum, capitalized terms have the meanings provided in the Agreement.

50304007.1

I.  **FACTS**

This is a class action lawsuit on behalf of GEICO Texas insureds who submitted covered first-party auto total-loss claims during the class period. Doc. 27, Second Amended Complaint (SAC), at ¶¶ 1-4, 17-20, 102-104. All Settlement Class Members were insured under form auto insurance policies with identical material terms. *Id.* Exhibit B, Declaration of Jacob Phillips ("Phillips Decl."). Plaintiffs allege that GEICO failed to pay the mandatory costs required under Texas law to buy a replacement vehicle. SAC, ¶¶ 24-31, 41-55.

A.  **Plaintiffs' Total Loss Claims and GEICO's Alleged Breach.**

Plaintiffs and Settlement Class Members entered into Texas private passenger auto policy agreements to be insured by GEICO under terms contained in form policies (the "Policy") with total loss physical damage terms that were the same for Plaintiffs and all Settlement Class Members. The Policies provided physical damage coverage for Plaintiffs and class members' total loss vehicles. *Id.* ¶¶ 17–19. Plaintiffs allege the Policy requires GEICO to pay actual cash value (or "ACV") on total loss claims. *Id.* ¶¶ 21-23. Actual cash value is defined in the Policies as "the replacement cost of the auto or property less depreciation or betterment." *Id.* ¶ 23.

Plaintiffs allege the "replacement cost" on a total loss vehicle includes ACV Sales Tax, Title Fees, Safety and Emissions inspections fees, and Registration Fees (collectively, "Regulatory Fees") required under Texas law, whether the totaled vehicle was leased, financed, or owned outright. *Id.* ¶¶ 24-30, 41-55. Plaintiffs allege that Texas law prohibits the purchase, transfer, or lease of a vehicle without the payment of ACV Sales Tax and Regulatory Fees. Plaintiffs and Settlement Class Members suffered total losses of their GEICO insured vehicles. Plaintiffs allege they and each Settlement Class Member were underpaid ACV Sales Tax and Regulatory Fees due on their total loss claims.

### B.   Class Member Claims.

Discovery revealed that approximately 310,000 Settlement Class Members submitted first party total-loss claims during the class period and were not paid full Regulatory Fees Plaintiffs claim were owed under the Policies. Phillips Decl. at ¶ 4. A smaller subset of Settlement Class Members who submitted first-party total loss claims during the class period also were not paid full ACV Sales Tax. *Id.*

### C.   Procedural Background.

On March 5, 2020, Plaintiffs filed a putative class action Complaint in the Southern District of Texas, against GEICO, which alleged GEICO underpaid ACV Sales Tax, Title Fees, and/or Registration Fees to its Texas insureds on auto insurance total loss claims. Doc. 1. On June 26, 2020, Plaintiffs filed the operative SAC, which alleged claims for breach of contract and for violation of the Texas Prompt Payment Act. GEICO sought dismissal of all claims and to compel appraisal on July 27, 2020 (Doc. 28), which Plaintiffs opposed on August 7, 2020 (Doc. 29). The Court granted in part and denied in part GEICO's request for dismissal and declined to compel appraisal. On November 5, 2020, GEICO filed its Answer to the SAC. Doc. 41.

On July 2, 2021, Plaintiffs filed their Motion for Class Certification and Memorandum of Law in Support. Docs. 58–60. On August 2, 2021, GEICO filed its Response in Opposition to Plaintiff's Motion for Class Certification (Docs. 62-64), and Plaintiffs filed a Reply on August 16, 2021 (Docs. 65-66). After holding oral argument, this Court granted class certification on November 30, 2021. Doc. 69. GEICO then petitioned for interlocutory review of the Order granting class certification, which the Fifth Circuit granted on February 17, 2022. On interlocutory review, after additional briefing and oral argument, the Fifth Circuit, on May 12, 2023, ultimately affirmed this Court's Order granting class certification.

After the Fifth Circuit's decision, the Parties agreed to attend mediation to attempt to amicably resolve the claims. After multiple sessions of mediation, the Parties notified this Court on December 15, 2023, that they had achieved a class settlement.

### D. The Agreement Provides 100% of ACV Sales Tax and approximately 80% of Regulatory Fees Sought.

The Agreement provides for two settlement classes: a "Sales Tax Class" and a "Regulatory Fees Class." Sales Tax Class Members who submit valid timely claims will receive payment from GEICO of Texas state sales tax of up to 6.25% (which is 100% of the sales tax claimed in this lawsuit), based on the value of their totaled vehicle at the time of loss, and $80.00 in Regulatory Fees (minus a set-off for sales tax and fees already paid to the claimant by GEICO and the class member's pro-rata share of any Class Counsel Fee Award). Regulatory Fees Class Members will receive a payment of $80.00 in regulatory fees (minus a set off for fees already paid to the claimant by GEICO and the class member's pro-rata share of any Class Counsel Fee Award). The proposed $80.00 Regulatory Fee recovery is approximately 80% of Regulatory Fees alleged to be owed to Plaintiffs and all class members who submit a claim. Phillips Decl. at ¶ 11; Exhibit A, Agreement at ¶¶ 38–41.[2] The State of Texas imposes a number of regulatory fees associated with the titling or registration of a vehicle in Texas. (Doc. 58 at Exhibit K (Kuntz Rep.)). The title fee imposed is a set amount of either $28.00 or $33.00. The state registration fee is a flat amount of $50.75. Counties impose local registration fees ranging from $5.75-$37.00. ECF No. 65 at pg. 8.

---

[2] The counties have varying local registration fees, but the average Regulatory Fees is just under $100.00. ECF No. 65 (Sealed Reply) at pg. 8; Phillips Decl. at 11. So, the $80.00 amount GEICO agreed to pay as part of the proposed Settlement constitutes approximately 80%, on average, of the amount Plaintiffs claim are included in the ACV of insured vehicles as defined by GEICO's Policy.

The cash benefit available to class members in the settlement is approximately $33,700,000.00. Agreement at ¶ 38; Phillips Decl. at ¶ 9. The Agreement also secured significant future non-monetary relief for GEICO insureds—as part of the settlement, GEICO agreed to continue paying ACV Sales Tax for all total losses, including leased vehicles, and to pay State Regulatory Fees in the amount of $50.75 in the settlement of Texas first-party total loss claims (subject to a change in the law, policy wording or fee charges).[3] Agreement at ¶ 42.

### E. The Agreement Provides Robust Notice and Easy Claim Submission.

The Settlement provides a robust notice and easy claim submission. All Settlement Class Members will receive a Postcard Notice for their respective settlement class on *two* occasions with a detachable pre-filled, return addressed, and pre-paid postage claim form to simply sign and place in the mail. Agreement at ¶ 51–54. The Postcard Notices are attached as Exhibit Nos. 1–2 to the Agreement. The Claim Form attached to the Postcard Notices does not require the insured to provide any information other than to sign the claim form and provide a corrected address if needed. *Id.* The Postcard Notices also direct recipients to the applicable Settlement Websites, which will be established by the Claims Administrator and include information about the Agreement and links to documents related to the lawsuit and Agreement. *Id.* ¶¶ 15, 18, 33, 53. Moreover, Settlement Class Members for whom GEICO possesses a valid email address will also receive an Email Notice, with hyperlinks to the Settlement Websites, through which Plaintiffs can access a blank claim form or submit a prefilled claim form by entering a unique claim ID or their total loss claim number. *Id.* at ¶¶ 19, 53.

---

[3] GEICO agreed to pay, at minimum, the title fee plus the state registration fee of $50.75. So, in counties where the title fee is $28.00, GEICO will pay $78.75 in Regulatory Fees, and in counties where the title fee is $33.00, GEICO will pay $83.75 in Regulatory Fees.

The Agreement also requires a Long Form Notice and other important case documents to be available to class members on the Settlement Websites. Agreement at ¶ 15, 18, 45. The Long Form Notice is attached to the Agreement as Exhibit 4. Settlement Classes Members may alternatively download a claim form online that will either be blank, upon entry of the Settlement Class Member's Claimant ID, or pre-filled (which will be reflected on the Postcard Notices). Agreement, ¶ 54. Finally, the Agreement provides for a toll-free number for Settlement Class Members to submit questions and request additional information. Agreement at ¶ 15, 44, 55. *See Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence that the terms of settlement are fair and reasonable).

### F. The Agreement Provides a Limited Release.

The release is narrow. Agreement at ¶ 67–71. Settlement Class Members release claims only for non-payment of sales tax and fees as part of total loss claim settlements. *Id.* Settlement Class Members do not release any claim for any other type of claim for vehicle valuation or any other type of claim underpayment.

### G. The Agreement Resolves a Case With Unsettled Legal Issues.

In pursuing the ACV Sales Tax and Regulatory Fees, Plaintiffs contended with legal authority inconsistent to their claims. Specifically, numerous courts have held that sales tax and title and registration fees are not part of a totaled vehicle's ACV, including the Fifth Circuit analyzing Texas law. *See, e.g.*, *Singleton v. Elephant Ins. Co.*, 953 F.3d 334 (5th Cir. 2020); *Pieczonka v. Progressive Select Ins. Co.*, 840 F. App'x 856 (6th Cir. 2021); *Thompson v. Progressive Universal Ins. Co.*, 420 F. Supp. 3d 867 (W.D. Wis. 2019). The Seventh Circuit affirmed dismissal of a claim that the ACV of a totaled vehicles includes sales tax and fees under GEICO's exact Policy language. *Sigler v. Geico Cas. Co.*, 967 F.3d 658 (7th Cir. 2020).

Obviously, Plaintiffs believe these cases are distinguishable and/or were wrongly decided, but the reasoning of these opinions might have precluded Plaintiffs from obtaining the ACV Sales Tax and/or Regulatory Fees sought here. The Agreement resolves these issues in favor of the Settlement Class. Agreement at ¶¶ 38–42.

### H. The Agreement Provides Reasonable Attorneys' Fees.

This was a highly contested lawsuit relating to a novel legal theory without precedent from Fifth Circuit or Texas law—or with negative precedent—relating to the payment of ACV Sales Tax and Regulatory Fees as part of ACV payments. Phillips Decl. at ¶ 12. The proposed Agreement provides that Class Counsel may apply for attorneys' fees and costs not to exceed $8,190,000.00. Agreement at ¶¶ 38(e), 47–48. Even if Class Counsel had not incurred a single dollar in costs—and, to be clear, Class Counsel incurred significant costs in litigating this Action—this amount would constitute 24.3% of the Class benefits, which falls comfortably within the benchmark set for attorneys' fees in the Fifth Circuit. Indeed, it is typical that "common benefit fees between 32-percent and 37-percent have been awarded." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 497–98 (E.D. La. 2020). The Fifth Circuit has approved of district courts' "use of the percentage method cross-checked with the *Johnson* factors." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012).[4]

---

[4] The *Johnson* factors—intended to ensure "a reasonable fee"—are: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to perform the legal service adequately; (4) preclusion of other employment; (5) customary fee for similar work in the community; (6) whether the fee is contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717, 720 (5th Cir. 1974).

Courts have long recognized the common fund doctrine, under which attorneys who create a recovery benefitting a group of people may be awarded fees and costs from the recovery. *See, e.g.*, *Van Gemert*, 444 U.S. at 478. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Lit.*, 727 F. Supp. 1201, 1203 (N.D. Ill. 1989). It also ensures that those who benefit from a lawsuit are not "unjustly enriched." *Van Gemert*, 444 U.S. at 478. The Fifth Circuit has directed that the fee be based upon a percentage of the class benefit so long as a *Johnson* cross check is performed. *Union Asset Mgmt.*, 669 F.3d at 644. Courts have discretion in choosing the proper percentage. *Id.* The fee GEICO agreed not to oppose or otherwise object to is significantly *less* than percentages routinely recognized as reasonable. *See In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 498; *Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 19, 2001) (approving fees of 30% in class settlement and noting the advantages of using the percentage method and that 20-30% is typically the benchmark); *Regmund v. Talisman Energy USA, Inc.*, 2021 U.S. Dist. LEXIS 92346 (S.D. Tex. May 12, 2021) (agreeing that the percentage-of-the-fund analysis was sensible, approving fees of 25%, and noting such percentage was "at the low end" of percentages typically approved in the Fifth Circuit).

As will be more fully explained when Plaintiffs and Class Counsel file their Motion for Attorneys' Fees, Costs, and Service Award, the requested fee amount is eminently reasonable.

## II.     THE AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE.

A class settlement may be effectuated only with court approval, after notice to the class, pursuant to Fed. R. Civ. P. 23(e). "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a

hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993). At the preliminary approval stage, the parties bear the burden of demonstrating the settlement is fair, reasonable, and adequate. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 11-CV-1363, 2012 U.S. Dist. LEXIS 5223, 2012 WL 92498, at *7 (E.D. La. Jan. 10, 2012). "[T]he standards for granting preliminary approval are not as stringent as those applied to a motion for final approval: The questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *Nelson v. Constant*, No. 17-14581, 2020 U.S. Dist. LEXIS 160726, at *9 (E.D. La. Sept. 2, 2020). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods.*, 310 F.R.D. 300, 314–15 (E.D. La. 2015) (citations omitted).

The Agreement should be approved because it is fair, reasonable, and adequate, not the subject of collusion. Fed. R. Civ. P. 23(e)(2); *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993); Ex. B, Phillips Decl. at ¶¶ 9–10 (explaining arms-length negotiations without collusion). To determine whether a settlement is fair, reasonable, and adequate, Rule 23(e) instructs courts to consider:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;

>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In performing this analysis, courts in the Fifth Circuit consider the following factors: (1) the existence of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings; (4) plaintiffs' probability of success; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). Each of these factors support a finding that the class Agreement is fair, reasonable, and adequate.

### i. Arm's Length Negotiations, Fraud, and Collusion

The first *Reed* factor is the existence of fraud or collusion, which overlaps with Fed. R. Civ. P. 23(e)(2)(B)'s requirement that negotiations occur at arms' length. Here, the Agreement is not the product of fraud or collusion as it was rigorous, hard fought, and the product of arm's length negotiation between sophisticated counsel under the supervision of a neutral mediator, Rodney Max. Phillips Decl. ¶ 9-10; *see also See Brna v. Isle of Capri Casinos Inc.*, 2018 U.S. Dist. LEXIS 26662, at *4-5 (S.D. Fla. Feb. 20, 2018) (Rodney Max's involvement "serves to reject any notion that a resulting settlement was the product of collusion."). And prior to engaging in mediation, the Parties extensively litigated the claims through discovery, class certification, and interlocutory appeal under Fed. R. Civ. P. 23(f). *See Diaz v. Hillsborough County Hosp. Auth.*, 2000 U.S. Dist. LEXIS 14061, at *15-16 (M.D. Fla. Aug. 7, 2000) (years of contested litigation prior to settlement demonstrates lack of collusion). "The parties entered the proposed settlement

agreement after a full-day mediation—which 'suggests the settlement was not the result of improper dealings.'" *Celeste v. Intrusion Inc.*, 2022 U.S. Dist. LEXIS 226841, at *12 (E.D. Tex. Dec. 16, 2022) (quotation omitted). This is critical because "[a] settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." McLaughlin on Class Actions § 6:7 (12th ed.); *see also City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."). Furthermore, there is no evidence of fraud or collusion. *See Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 U.S. Dist. LEXIS 227456, at *33 (W.D. Tex. Aug. 20, 2018) ("The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary.").

### ii. The Relief is Adequate Given the Complexity, Expense, and Likely Duration of Litigation

By reaching a settlement, "Plaintiff is avoiding expense and delay and ensuring recovery for the Class." *Hays v. Eaton Grp Attys., LLC*, No. 17-88-JWD-RLB, 2019 U.S. Dist. LEXIS 17029, at *25 (M.D. La. Feb. 4, 2019). Even for straightforward claims, approval of settlement is favored where settlement "avoids the risks and burdens of potentially protracted litigation." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006).

The Motion for Class Certification was fully briefed and granted, which was affirmed on interlocutory appeal, and the issues presented to the Court were complex. Moreover, summary judgment briefing, pre-trial practice and potentially a trial presented significant risks to both sides. Moreover, an ultimate trial of this case involving extensive data would be lengthy, burdensome, and exceedingly costly in both time and resources of the parties and the Court. A judgment would

likely be appealed thereby extending the litigation and forestalling relief for potential class members. "The settlement, on the other hand, makes monetary and injunctive relief available to Class members in a prompt and efficient manner." *Hays*, 2019 U.S. Dist. LEXIS 17029, at *25; *see also Cole v. Collier*, 2018 U.S. Dist. LEXIS 97110, at *17 (S.D. Tex. Jun. 8, 2018) ("Absent settlement, the litigation would almost certainly have continued for years, with no assurance of as favorable a resolution. This factor weighs strongly in favor of approval of the Settlement."). This factor thus supports approval of the Agreement.

### iii. The Stage of the Proceedings

"This factor asks whether the parties have obtained sufficient information 'to evaluate the merits of the competing positions.'" *In re Educ. Testing*, 447 F. Supp. 2d at 620 (quoting *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). "[T]he question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed . . . ." *Id.* at 620–21. "[W]hen the settlement proponents have taken affirmative steps to gather data on the claims at issue, and the terms of the settlement or settlement negotiations are not patently unfair, the Court may rely on counsel's judgment that the information gathered was enough to support a settlement." *Id.* at 621.

This proceeding had advanced completely through discovery, a dispositive motion, class certification briefing, an Order granting class certification, and an interlocutory appeal. Plaintiffs took substantial discovery—including written discovery, multiple depositions concerning liability and damages—secured tens of thousands of pages and extensive data, retained several experts, took expert depositions, and so forth. Phillips Decl., ¶ 15, 21-22. Moreover, Class Counsel has

extensive institutional knowledge of GEICO's data systems and available information given they have litigated to completion multiple virtually identical cases against GEICO in other states. *Id*. Through these efforts, the parties obtained sufficient information to make a reasoned determination on the desirability of settlement on the terms set forth in the Agreement. *Cf. Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (noting that class representatives can have sufficient information base even after a few months of litigation and even absent formal discovery).

                iv.      **The Factual and Legal Obstacles to Prevailing on the Merits**

This case is subject to legitimate risk. "Litigation is inherently risky and full of impediments, even where a defendant 'all but admitted' and 'the plaintiffs had a strong chance of proving' liability." *Hays*, 2019 U.S. Dist. LEXIS 17029, at *25 (quoting *In re Educ. Testing Serv. Praxis*, 447 F. Supp. 2d at 620–21). "A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

A trial in this case would invariably involve risks to Plaintiff on the questions of liability and damages. *See Hays*, 2019 U.S. Dist. LEXIS 17029, at *25. Proceeding without a settlement would require tremendous time and resources to litigate dispositive motions, prevail at trial, and prevail again on appeals to the Fifth Circuit. *See id.* And this case is subject to an added dimension of legal obstacles as the theory pressed by Plaintiff is arguably contradicted by opinions from appellate courts which have not been overturned. *See* Phillips Decl., ¶ 12; *Singleton*, 953 F.3d 334; *Pieczonka*, 840 Fed. Appx. 856; *Sigler*, 967 F.3d 658.

                v.      **The Possible Range of Recovery and Certainty of Damages**

Approval should not be withheld merely because the settlement amount amounts to less than the full *potential* recovery. "[A] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Hays*, 2019 U.S. Dist. LEXIS 17029, at *28 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1386 (S.D.N.Y. 1972), *aff'd in part*, *rev'd on other grounds*, 495 F.2d 448 (2d Cir. 1974) (a recovery of 3.2% to 3.7% of the amount sought is "well within the ball park").

Here, GEICO agreed to a settlement in which Settlement Class Members are entitled to 100% of the ACV Sales Tax and approximately 80% of the Regulatory Fees sought in this action. Agreement, ¶ 38; Phillips Decl., ¶ 10. This recovery is well above the low end of the potential recovery ($0) and near or at the top of high end of potential recovery. It is significantly higher than the overwhelming majority of class action settlements approved by this Court and others. Accordingly, this factor favors preliminary approval of the Settlement.

### vi. The Opinions of Class Counsel and the Class Representative

The parties and Class Counsel unanimously support the proposed settlement, lending further support to approval of the Agreement. *See Celeste*, 2022 U.S. Dist. LEXIS 226841, at *21. Indeed, the Fifth Circuit has held that "absent fraud, collusion, or the like," a court "should be hesitant to substitute its own judgment for that of counsel[.]" *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); Phillips Decl., ¶¶ 18, 23.

### III. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES.

Typically, in deciding whether to grant preliminary approval, courts make a preliminary inquiry into whether the requirements of Fed. R. Civ. P. 23 for certification of a class for settlement purposes are satisfied. But, in amending Rule 23 in 2018, the Advisory Committee clarified that

when considering a proposed Settlement Agreement for members of a Class already certified by a court, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." See Fed. R. Civ. P. 23(e)(1)(B), Committee Notes on Rules—2018 Amendment.

This Court previously granted class certification after contested briefing and the Fifth Circuit affirmed that Order. Doc. 69. The only substantive difference between the classes certified by this Court and the proposed Settlement Class is that the Settlement Class runs through the date on which preliminary approval is granted, rather than ending on the date the litigated classes were certified. Phillips Decl. at ¶ 16. As such, for the same reasons outlined in the Order certifying the litigation classes in this matter, each Rule 23 requirement is satisfied for the proposed Settlement Classes, defined as:

**Regulatory Fees Class:**

All Insureds covered under any Texas private passenger automobile insurance policy that defined "Actual Cash Value" under Section III of the policy as "the replacement cost of the auto or property less *depreciation* and/or *betterment*" issued by GEICO Advantage Insurance Company, GEICO Indemnity Company, Government Employees Insurance Company, GEICO County Mutual Insurance Company, and GEICO Choice Insurance Company and their subsidiaries or related insurance companies (collectively, "GEICO") who made a first-party physical damage claim from March 5, 2016, through the date the Motion for Preliminary Approval was filed that GEICO paid as a total loss under comprehensive or collision coverage and who do not timely opt-out from the settlement class. The Regulatory Fees Class does not include any members of the Sales Tax Class.

**Sales Tax Class:**

All Insureds covered under any Texas private passenger automobile insurance policy that defined "Actual Cash Value" under Section III of the policy as "the replacement cost of the auto or property less *depreciation* and/or *betterment* issued by GEICO who made a first-party property damage claim on a leased vehicle from March 5, 2016, through the date the Motion for Preliminary Approval was filed that GEICO paid as a total loss under comprehensive or collision coverage and who did not receive full state Sales Tax based on the adjusted vehicle value of the totaled

15

vehicle as part of the settlement payment and who do not timely opt-out from the settlement class.

Excluded from the Classes are:

(1) GEICO, all present or former officers and/or directors of GEICO, the Neutral Evaluator, Class Counsel, and a Judge of this Court;
(2) Claims for which GEICO received a valid and executed release;
(3) Claims where GEICO paid full Sales Tax and Regulatory Fees; and
(4) Claims subject to binding appraisal and/or arbitration where full Sales Tax and Regulatory Fees were paid.

### IV.     THE COURT SHOULD APPROVE NOTICE.

Under Rule 23(e)(1), in approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." For classes certified under Rule 23(b)(3), courts must further ensure that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified by reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005).

The notices provided for in the Agreement—which includes two separate Postcard Notices (with detachable, pre-filled, pre-addressed Claim Forms), a Long Form Notice posted to the Settlement Websites, which itself includes information about the Settlement and relevant documents, an Email Notices for those Members for whom GEICO possesses a valid email address, and a toll-free telephone number—are sufficient. *See Davis v. Mindshare Ventures LLC*, No. 4:19-cv-1961, 2020 U.S. Dist. LEXIS 105994, at *5–*6 (S.D. Tex. June 12, 2020) (finding notice—which "include[d] the postcard notice, the detachable claim form, and the question-and answer notice to appear on the dedicated settlement website"—met the requirements of Rule 23(c)(2)(B) and due process); *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 301–02 (N.D.

16

Miss. 2014) (approving notice program that included one postcard notice, a notice by publication, and a long form notice available on a settlement website).The Court should therefore approve the notice provided for in the Agreement and the specific notice forms attached thereto. *See* Exs. 1–2, 4–6 to Agreement.

Finally, for the convenience of the Court, below is a proposed preliminary schedule outlining the dates set forth in the Settlement Agreement, which comports with the Schedule outlined in the proposed Order preliminarily approving of the proposed Settlement, which is affixed as Exhibit 3 to the Settlement Agreement.

**PROPOSED PRELIMINARY SCHEDULE**

| # | Action | Deadline |
|---|--------|----------|
| 1 | Website Notice Posted by Settlement Administrator | No later than 60 days from the date of this Order |
| 2 | Deadline for Settlement Administrator to mail out first Postcard Notice. | No later than 60 days from the date of this Order |
| 3 | Deadline for Settlement Administrator to mail out second Postcard Notice and to send Email Notice | No later than 15 days from the date the first Postcard Notice is sent |
| 4 | Deadline for Settlement Class Members to opt-out of the Agreement | No later than 30 days after the first Postcard Notice is sent. |
| 5 | Deadline for submission of Notice of Intent to object to agreement | No later than 30 days after the first Postcard notice is sent. |
| 6 | Deadline for Settlement Class Members to file claims. | No later than 30 days after the second Postcard Notice is sent. |

| 7 | Deadline for Class Counsel to file their Motion for Final Approval of the Settlement. | No later than 14 days before the Final Fairness Hearing |
|---|---|---|
| 8 | Deadline for Class Counsel to file the Motion for Attorneys' Fees, Costs, and Service Award. | No later than 15 days before the deadline to file objections or opt-outs |
| 9 | Deadline for Settlement Administrator to file proof of completion of Notice, along with complete and accurate list of Settlement Class Members requesting exclusion. | No later than 10 days prior to the Fairness Hearing |
| 10 | Final Approval Hearing | Month, Day Year, at Time [At least 120 days after the date that a Preliminary Approval Order is entered] |

## CONCLUSION

Plaintiffs respectfully request that the Court grant Preliminary Approval of the Agreement and certify the Settlement Classes, and enter the Proposed Order attached as Exhibit 3 to the Agreement. The Order approves the form of notice to be given to the class, establishes a schedule and process for the submission of any objections or requests for exclusion from the class, and provides for a fairness hearing to be held by the Court. Plaintiffs will request final approval of the settlement and file a motion for approval of attorneys' fees, costs before the fairness hearing.

Respectfully submitted this 18th day of March, 2024.

/s/ Jake Phillips
Jacob L. Phillips
**Jacobson Phillips PLLC**
478 E. Altamonte Dr.
Ste. 108-570
Altamonte Springs, FL 32701
Tel: (407) 720-405

18

> Richard Daly (attorney in charge)
> Texas Bar No. 00796429
> John Scott Black
> Texas Bar No. 24012292
> **DALY & BLACK, P.C.**
> 2211 Norfolk St., Suite 800
> Houston, TX 77098
> Tel: (713) 655-1405
> Rdaly@dalyblack.com
> jblack@dalyblack.com
>
> Andrew Shamis
> Texas Bar No. 24112322
> Angelica M. Gentile
> Texas Bar No. 24112322
> **SHAMIS & GENTILE, P.A.**
> 14 N.E. 1st Ave., Suite 705
> Miami, Florida 33132
> Tel: (305) 479-2299
> ashamis@shamisgentile.com
>
> Christopher C. Gold
> Scott Edelsberg
> Florida Bar No. 088733
> **EDELSBERG LAW, PA**
> 20900 NE 30th Ave., Ste. 417
> Aventura, FL 33180
> Tel: (305) 975-3320
> chris@edelsberglaw.com
> scott@edelsberglaw.com
>
> Christopher B. Hall (admitted *pro hac vice*)
> **HALL & LAMPROS, LLP**
> 400 Galleria Parkway, Suite 1150
> Atlanta, GA 30339
> Tel: (404) 876-8100
> Fax: (404) 876-3477
> chall@hallandlampros.com
>
> *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of March, 2024, I electronically filed a true and exact copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/Jake Phillips*
Jacob Phillips, Esq.
Attorney for Plaintiffs
