IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PHILIP ANGELL, STEVEN BROWN, TONNIE BECK, TAMMY MORRIS, and DAWN BURNHAM, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GEICO ADVANTAGE INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO COUNTY MUTUAL INSURANCE COMPANY, and GEICO CHOICE INSURANCE COMPANY,<br><br>Defendants. | CASE NO.: 4:20-CV-00799<br><br>CLASS ACTION |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

Plaintiffs Phillip Angell, Steven Brown, Tonnie Beck, Tammy Morris, and Dawn Burnham, individually and on behalf of the Settlement Class, files this Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class. Defendants do not oppose this Motion. The Settlement Agreement ("Agreement") was filed at Dkt. No. 87-1.[1]

I.  FACTS

As set forth in the Motion for Preliminary Approval, Dkt. No. 87, this is a class action lawsuit on behalf of GEICO Texas insureds who submitted covered first party auto total loss claims with dates of loss during the class period. (Dkt. No. 27, Second Amended Complaint (SAC), at ¶¶

---

[1] For purposes of this memorandum, capitalized terms shall have the meanings provided in the Agreement.

1–4, 24-31). All Settlement Class Members were insured under form auto insurance policies with identical material terms. *Id.* ¶ 18-19; Dkt. No. 89-1, Declaration of Jacob Phillips ("Phillips Decl.") at ¶ 3. Plaintiffs allege GEICO failed to pay the mandatory fees required under Texas law to buy a replacement vehicle. This Court already preliminarily approved the proposed Settlement Agreement and directed that Notice be sent to inform Class Members and provide the opportunity to review and file any objections. Dkt. No. 88. Notice has now been completed, and not a *single* class member has objected. *See* Exhibit 1 (Admin Decl.). As such, Plaintiffs respectfully request this Court grant final approval of the proposed Settlement Agreement, enter final judgment, and enter an Order substantially similar to that affixed hereto as Exhibit 2.

### A. Plaintiff's Total Loss Claim and GEICO's Alleged Breach.

Plaintiffs and Settlement Class Members entered into Texas private passenger auto policy agreements to be insured by GEICO under terms contained in form policies (the "Policy") with total loss physical damage terms that were the same for Plaintiffs and all Settlement Class Members. The Policies provided physical damage coverage for Plaintiffs and class members' total loss vehicles. SAC at ¶¶ 17–19. Plaintiffs allege the Policy requires GEICO to pay actual cash value (or "ACV") on total loss claims. *Id.* ¶¶ 21-23. Actual cash value is defined in the Policies as "the replacement cost of the auto or property less depreciation or betterment." *Id.* ¶ 23.

Plaintiffs allege the "replacement cost" on a total loss vehicle includes ACV Sales Tax, Title Fees, Safety and Emissions inspections fees, and Registration Fees (collectively, "Regulatory Fees") required under Texas law, whether the totaled vehicle was leased, financed, or owned outright. *Id.* ¶¶ 24-30, 41-55. Plaintiffs allege that Texas law prohibits the purchase, transfer, or lease of a vehicle without the payment of ACV Sales Tax and Regulatory Fees. Plaintiffs and Settlement Class Members suffered total losses of their GEICO insured vehicles. Plaintiffs allege

**Error! Unknown document property name.**

they and each Settlement Class Member were underpaid ACV Sales Tax and Regulatory Fees due on their total loss claims.

### B.     Class Member Claims.

Discovery revealed that over 310,000 Settlement Class Members submitted first party total-loss claims during the class period and were not paid full Regulatory Fees Plaintiffs claim were owed under the Policies. Phillips Decl. at ¶ 4. A subset of Settlement Class Members (over 5,700) who submitted first-party total loss claims during the class period also were not paid full ACV Sales Tax. *Id*.

### C.     Procedural Background.

On March 5, 2020, Plaintiffs filed a putative class action Complaint in the Southern District of Texas, against GEICO, which alleged GEICO underpaid ACV Sales Tax, Title Fees, and/or Registration Fees to its Texas insureds on auto insurance total loss claims. Doc. 1. On June 26, 2020, Plaintiffs filed the operative SAC, which alleged claims for breach of contract and for violation of the Texas Prompt Payment Act. GEICO sought dismissal of all claims and to compel appraisal on July 27, 2020 (Doc. 28), which Plaintiffs opposed on August 7, 2020 (Doc. 29). The Court granted in part and denied in part GEICO's request for dismissal and declined to compel appraisal. On November 5, 2020, GEICO filed its Answer to the SAC. Doc. 41.

On July 2, 2021, Plaintiffs filed their Motion for Class Certification and Memorandum of Law in Support. Docs. 58–60. On August 2, 2021, GEICO filed its Response in Opposition to Plaintiff's Motion for Class Certification (Docs. 62-64), and Plaintiffs filed a Reply on August 16, 2021 (Docs. 65-66). After holding oral argument, this Court granted class certification on November 30, 2021. Doc. 69. GEICO then petitioned for interlocutory review of the Order granting class certification, which the Fifth Circuit granted on February 17, 2022. On interlocutory

review, after additional briefing and oral argument, the Fifth Circuit, on May 12, 2023, ultimately affirmed this Court's Order granting class certification.

After the Fifth Circuit's decision, the Parties agreed to attend mediation to attempt to amicably resolve the claims. After multiple sessions of mediation, the Parties notified this Court on December 15, 2023, that they had achieved a class settlement. On March 18, 2024, Plaintiffs moved for preliminary approval of the proposed Settlement. Dkt. No. 87. On March 27, 2024, this Court granted preliminary approval and ordered that Notice of the terms of that Settlement be provided to Settlement Class Members in accordance with the terms of the Settlement Agreement. Dkt. No. 88. That Notice plan has now been effectuated, an incredible 99.7% of class members received direct notice, not a *single* class member has objected and only 14 (less than 0.001%) have opted out. Exhibit 1 at ¶¶ 16, 22, 24.

### D. The Agreement Provides 100% of ACV Sales Tax and approximately 80% of Regulatory Fees Sought.

As Plaintiffs explained in seeking preliminary approval, the proposed Agreement provides for two settlement classes: a "Sales Tax Class" and a "Regulatory Fees Class."  Sales Tax Class Members who submit valid timely claims will receive payment from GEICO of Texas state sales tax of up to 6.25% (which is 100% of the sales tax claimed in this lawsuit), based on the value of their totaled vehicle at the time of  loss, and $80.00 in Regulatory Fees (minus a set-off for sales tax and fees already paid to the claimant by GEICO and the class member's pro-rata share of any Class Counsel Fee Award). Regulatory Fees Class Members will receive a payment of $80.00 in regulatory fees (minus a set off for fees already paid to the claimant by GEICO and the class member's pro-rata share of any Class Counsel Fee Award). The proposed $80.00 Regulatory Fee recovery is approximately 80% of Regulatory Fees alleged to be owed to Plaintiffs and all class

4

members who submit a claim. Phillips Decl. at ¶ 11; Exhibit A, Agreement at ¶¶ 38–41.[2] The State of Texas imposes a number of regulatory fees associated with the titling or registration of a vehicle in Texas. (Doc. 58 at Exhibit K (Kuntz Rep.)). The title fee imposed is a set amount of either $28.00 or $33.00. The state registration fee is a flat amount of $50.75. Counties impose local registration fees ranging from $5.75-$37.00. ECF No. 65 at pg. 8.

The cash benefit available to class members in the settlement is approximately $33,700,000.00. Agreement at ¶ 38; Phillips Decl. at ¶ 9. The Agreement also secured significant future non-monetary relief for GEICO insureds—as part of the settlement, GEICO agreed to continue paying ACV Sales Tax for all total losses, including leased vehicles, and to pay State Regulatory Fees in the amount of $50.75 in the settlement of Texas first-party total loss claims (subject to a change in the law, policy wording or fee charges).[3] Agreement at ¶ 42.

### E.  The Agreement Provided Robust Notice and Easy Claim Submission.

The Settlement, and this Court's Order directing that the Notice Plan be effectuated as set forth in the Settlement Agreement, provided a robust Notice program and an extremely simple claims process. All Settlement Class Members received a Postcard Notice for their respective settlement class on *two* occasions with a detachable pre-filled, return addressed, and pre-paid postage claim form to simply sign and place in the mail. Exhibit 1 at ¶¶ 8-13. The Claim Form attached to the Postcard Notices did not require the insured to provide any information other than

---

[2] The counties have varying local registration fees, but the average Regulatory Fees is just under $100.00. ECF No. 65 (Sealed Reply) at pg. 8; Phillips Decl. at ¶ 11. So, the $80.00 amount GEICO agreed to pay as part of the proposed Settlement constitutes approximately 80%, on average, of the amount Plaintiffs claim are included in the ACV of insured vehicles as defined by GEICO's Policy.

[3] GEICO agreed to pay, at minimum, the title fee plus the state registration fee of $50.75. So, in counties where the title fee is $28.00, GEICO will pay $78.75 in Regulatory Fees, and in counties where the title fee is $33.00, GEICO will pay $83.75 in Regulatory Fees.

to sign the claim form and provide a corrected address if needed. The Postcard Notices also directed recipients to the applicable Settlement Websites, which were established by the Claims Administrator and included information about the Agreement and links to documents related to the lawsuit and Agreement, as well as the subsequently-filed Motion for Attorneys' Fees, Costs, and Service Awards. *Id*. ¶¶ 17-18. Moreover, Settlement Class Members for whom GEICO possessed a valid email address received an Email Notice, with hyperlinks to the Settlement Websites, through which they could access a blank claim form or submit a prefilled claim form by entering a unique claim ID or their total loss claim number. *Id*. at ¶¶ 14-15.

The Agreement also required a Long Form Notice and other important case documents to be available to class members on the Settlement Websites. Settlement Classes Members were given the alternative option to download a claim form online that was either blank, or, upon entry of the Settlement Class Member's Claimant ID, was pre-filled (all of which was explained to Settlement Class Members on the Postcard Notices). Agreement, ¶ 54. Finally, the Agreement provided for a toll-free number for Settlement Class Members to submit questions and request additional information. Exhibit 1 at ¶¶ 19-20. *See also Braynen v. Nationstar Mortg., LLC*, 2015 WL 6872519, at *18 (S.D. Fla. Nov. 9, 2015) (robust notice plan is evidence that the terms of settlement are fair and reasonable).

The unusually excellent results of the Notice Program (and the substantial benefits afforded by the proposed Settlement) ordered by this Court is manifestly evidence in the declaration submitted by the Settlement Administrator as Exhibit 1. An incredible 99.7% of Settlement Class Members received direct, actual Notice. *Id*. at ¶ 16. Not a single one of those Class Members found cause to object. *Id*. at ¶¶ 23-24. And less than 0.001% of them (14 in total) requested to opt out of

6

the Settlement Class. *Id*. at ¶¶ 21-22. This indicates an extremely favorable response to the terms of the proposed Settlement and strongly counsels in favor of final approval.

### F. The Agreement Provides a Limited Release.

The release is narrow. Agreement at ¶ 67–71. Settlement Class Members release claims only for non-payment of sales tax and fees as part of total loss claim settlements. *Id.* Settlement Class Members do not release any claim for any other type of claim for vehicle valuation or any other type of claim underpayment.

### G. The Agreement Resolves a Case With Unsettled Legal Issues.

In pursuing the ACV Sales Tax and Regulatory Fees, Plaintiffs contended with legal authority inconsistent to their claims. Specifically, numerous courts have held that sales tax and title and registration fees are not part of a totaled vehicle's ACV, including the Fifth Circuit analyzing Texas law. *See, e.g.*, *Singleton v. Elephant Ins. Co.*, 953 F.3d 334 (5th Cir. 2020); *Pieczonka v. Progressive Select Ins. Co.*, 840 F. App'x 856 (6th Cir. 2021); *Thompson v. Progressive Universal Ins. Co.*, 420 F. Supp. 3d 867 (W.D. Wis. 2019). The Seventh Circuit affirmed dismissal of a claim that the ACV of a totaled vehicles includes sales tax and fees under GEICO's exact Policy language. *Sigler v. Geico Cas. Co.*, 967 F.3d 658 (7th Cir. 2020). Of course, Plaintiffs believe these cases are distinguishable and/or were wrongly decided, but the reasoning of these opinions might have precluded Plaintiffs from obtaining the ACV Sales Tax and/or Regulatory Fees sought here. The Agreement resolves these issues in favor of the Settlement Class. Agreement at ¶¶ 38–42.

### H. The Agreement Provides Reasonable Attorneys' Fees.

This was a highly contested lawsuit from Fifth Circuit or Texas law—or with negative precedent—relating to the payment of ACV Sales Tax and Regulatory Fees as part of ACV

payments. Phillips Decl. at ¶ 12. The proposed Agreement provides that Class Counsel may apply for attorneys' fees and costs not to exceed $8,190,000.00. Agreement at ¶¶ 38(e), 47–48. Even if Class Counsel had not incurred a single dollar in costs—and, to be clear, Class Counsel incurred significant costs in litigating this Action—this amount would constitute 24.3% of the Class benefits, which falls comfortably within the benchmark set for attorneys' fees in the Fifth Circuit. Indeed, it is typical that "common benefit fees between 32-percent and 37-percent have been awarded." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 497–98 (E.D. La. 2020). The Fifth Circuit has approved of district courts' "use of the percentage method cross-checked with the *Johnson* factors." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012).[4]

Courts have long recognized the common fund doctrine, under which attorneys who create a recovery benefitting a group of people may be awarded fees and costs from the recovery. *See, e.g.*, *Van Gemert*, 444 U.S. at 478. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Lit.*, 727 F. Supp. 1201, 1203 (N.D. Ill. 1989). It also ensures that those who benefit from a lawsuit are not "unjustly enriched." *Van Gemert*, 444 U.S. at 478. The Fifth Circuit has directed that the fee be based upon a percentage of the class benefit so long as a *Johnson* cross

---

[4] The *Johnson* factors—intended to ensure "a reasonable fee"—are: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to perform the legal service adequately; (4) preclusion of other employment; (5) customary fee for similar work in the community; (6) whether the fee is contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717, 720 (5th Cir. 1974).

Error! Unknown document property name.

check is performed. *Union Asset Mgmt.*, 669 F.3d at 644. Courts have discretion in choosing the proper percentage. *Id.* The fee GEICO agreed not to oppose or otherwise object to is significantly *less* than percentages routinely recognized as reasonable. *See In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 498; *Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 19, 2001) (approving fees of 30% in class settlement and noting the advantages of using the percentage method and that 20-30% is typically the benchmark); *Regmund v. Talisman Energy USA, Inc.*, 2021 U.S. Dist. LEXIS 92346 (S.D. Tex. May 12, 2021) (agreeing that the percentage-of-the-fund analysis was sensible, approving fees of 25%, and noting such percentage was "at the low end" of percentages typically approved in the Fifth Circuit).

So, as fully explained in the Motion for Attorneys' Fees, Costs, and Service Award, Dkt. No. 89, the requested fee amount is eminently reasonable.

## II. THE AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE.

A class settlement may be effectuated only with court approval, after notice to the class, pursuant to Fed. R. Civ. P. 23(e). "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993). Whether a proposed agreement is sufficiently fair and reasonable is analyzed under a six-factor test: (1) the existence of any fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery; (4) the probability of success; (5) the range of possible recovery; and (6) the opinions of the counsel, class representatives, and absent class members. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)

Error! Unknown document property name.

The Agreement should be approved because it is fair, reasonable, and adequate, not the subject of collusion. Fed. R. Civ. P. 23(e)(2); *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993); Phillips Decl. at ¶¶ 9–10 (explaining arms-length negotiations without collusion). Critically, after robust Notice was provided, not a single class member objected to the terms of the proposed Agreement.

In addition to, and consistent with the *Reed* factors, to determine whether a settlement is fair, reasonable, and adequate, Rule 23(e) instructs courts to consider:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Each of these factors support finding that the class Agreement is fair, reasonable, and adequate.

### i.     Arm's Length Negotiations, Fraud, and Collusion

The first *Reed* factor is the existence of fraud or collusion, which overlaps with Fed. R. Civ. P. 23(e)(2)(B)'s requirement that negotiations occur at arms' length. The Agreement is not the product of fraud or collusion as it was rigorous, hard fought, and the product of arm's length negotiation between sophisticated counsel. Phillips Decl. at ¶¶ 9–10. "The parties entered the proposed settlement agreement after a full-day mediation—which 'suggests the settlement was not

**Error! Unknown document property name.**

the result of improper dealings.'" *See Celeste v. Intrusion Inc.*, 2022 U.S. Dist. LEXIS 226841, at *12 (E.D. Tex. Dec. 16, 2022) (quotation omitted). Moreover, the Settlement was the product of arm's length negotiation between sophisticated counsel under the supervision of a neutral mediator, Rodney Max. Phillips Decl. ¶ 9-10; *see also See Brna v. Isle of Capri Casinos Inc.*, 2018 U.S. Dist. LEXIS 26662, at *4-5 (S.D. Fla. Feb. 20, 2018) (Rodney Max's involvement "serves to reject any notion that a resulting settlement was the product of collusion."). And prior to engaging in mediation, the Parties extensively litigated the claims through discovery, class certification, and interlocutory appeal under Fed. R. Civ. P. 23(f). *See generally Diaz v. Hillsborough County Hosp. Auth.*, 2000 U.S. Dist. LEXIS 14061, at *15-16 (M.D. Fla. Aug. 7, 2000) (years of contested litigation prior to settlement demonstrates lack of collusion). This is critical because "[a] settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." McLaughlin on Class Actions § 6:7 (12th ed.); *see also City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."). Finally, there is no evidence of fraud or collusion. *See Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 U.S. Dist. LEXIS 227456, at *33 (W.D. Tex. Aug. 20, 2018) ("The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary.").

So, this factor strongly supports approving the proposed Settlement.

   ii. **The Relief is Adequate Given the Complexity, Expense, and Likely Duration of Litigation**

By reaching a settlement, "Plaintiff is avoiding expense and delay and ensuring recovery for the Class." *See Hays v. Eaton Grp Attys., LLC*, No. 17-88-JWD-RLB, 2019 U.S. Dist. LEXIS 17029, at *25 (M.D. La. Feb. 4, 2019). Even for straightforward claims, approval of settlement is

11

favored where settlement "avoids the risks and burdens of potentially protracted litigation." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006).

The Motion for Class Certification was fully briefed and granted, which was affirmed on interlocutory appeal, and the issues presented to the Court were complex. Moreover, summary judgment briefing, pre-trial practice and potentially a trial presented significant risks to both sides. Moreover, an ultimate trial of this case involving extensive data would be lengthy, burdensome, and exceedingly costly in both time and resources of the parties and the Court. A judgment would likely be appealed thereby extending the litigation and forestalling relief for potential class members. "The settlement, on the other hand, makes monetary and injunctive relief available to Class members in a prompt and efficient manner." *Hays*, 2019 U.S. Dist. LEXIS 17029, at *25. This factor thus supports approval of the Agreement.

### iii. The Stage of the Proceedings

"This factor asks whether the parties have obtained sufficient information 'to evaluate the merits of the competing positions.'" *In re Educ. Testing Serv. Praxis Principles of Learning*, 447 F. Supp. 2d at 620 (quoting *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004)). "[T]he question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed . . . ." *Id.* at 620–21. "[W]hen the settlement proponents have taken affirmative steps to gather data on the claims at issue, and the terms of the settlement or settlement negotiations are not patently unfair, the Court may rely on counsel's judgment that the information gathered was enough to support a settlement." *Id.* at 621.

12

This proceeding had advanced completely through discovery, a dispositive motion, class certification briefing, an Order granting class certification, and an interlocutory appeal. Plaintiffs took substantial discovery—including written discovery, multiple depositions concerning liability and damages—secured tens of thousands of pages and extensive data, retained several experts, took expert depositions, and so forth. Phillips Decl., ¶ 15, 21-22. Moreover, Class Counsel has extensive institutional knowledge of GEICO's data systems and available information given they have litigated to completion multiple virtually identical cases against GEICO in other states, which substantially assisted in case being litigated not only extensively, but efficiently. *Id*. And through these efforts, the parties obtained sufficient information to make a reasoned determination on the desirability of settlement on the terms set forth in the Agreement. *Cf. Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014) (noting that class representatives can have sufficient information base even after a few months of litigation and even absent formal discovery).

### iv. The Factual and Legal Obstacles to Prevailing on the Merits

This case is subject to legitimate risk. "Litigation is inherently risky and full of impediments, even where a defendant 'all but admitted' and 'the plaintiffs had a strong chance of proving' liability." *Hays*, 2019 U.S. Dist. LEXIS 17029, at *25 (quoting *In re Educ. Testing Serv. Praxis*, 447 F. Supp. 2d at 620–21). "A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case." *Reed*, 703 F.2d at 172.

A trial would invariably involve risks to Plaintiffs on the questions of liability and damages. *See Hays*, 2019 U.S. Dist. LEXIS 17029, at *25. Proceeding without a settlement would require tremendous time and resources (and significant risk) to litigate dispositive motions, prevail at trial, and prevail again at the appeals of class certification, liability and damages. *See id.* And this case

13

is subject to an added dimension of legal obstacles as the theory pressed by Plaintiffs is novel and arguably contradicted by opinions from appellate courts which have not been overturned, as well as potentially persuasive opinions rejecting claims similar to Plaintiffss'. *See* Phillips Decl., ¶ 12; *Singleton*, 953 F.3d 334; *Pieczonka*, 840 F. App'x 856; *Wilkerson*, 997 F.3d 666; *Sigler*, 967 F.3d 658.

### v. The Possible Range of Recovery and Certainty of Damages

Approval should not be withheld merely because the settlement amount amounts to less than the full *potential* recovery. "[A] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Hays*, 2019 U.S. Dist. LEXIS 17029, at *28 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also City of Detroit v. Grinnell Corp.*, 356 F. Supp. 1380, 1386 (S.D.N.Y. 1972), *aff'd in part*, *rev'd on other grounds*, 495 F.2d 448 (2d Cir. 1974) (a recovery of 3.2% to 3.7% of the amount sought is "well within the ball park").

Here, GEICO agreed to a settlement in which Settlement Class Members are entitled to 100% of the ACV Sales Tax and approximately 80% of the Regulatory Fees sought in this action. Agreement, ¶ 38; Phillips Decl., ¶ 10. This recovery is well above the low end of the potential recovery ($0) and near or at the top of high end of potential recovery. It is significantly higher than the overwhelming majority of class action settlements approved by this Court and others. Accordingly, this factor favors preliminary approval of the Settlement. *See, e.g.*, *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 304-05 (S.D. Miss. 2014) (approving damages of 46.5% of potential recovery and noting that "[a] satisfactory settlement could amount to a hundredth or even a thousandth part of a single percent of the potential recovery") (cleaned up) (citing *Parker v. Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir. 1982)); *In re Polyurethane Foam Antitrust Litig.*,

2015 U.S. Dist. LEXIS 23482, at *5 (N.D. Ohio Feb. 26, 2015) ("A settlement figure that equates to roughly 18 percent of the best-case-scenario classwide overcharges is an impressive result in view of these possible trial outcomes."); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 U.S. Dist. LEXIS 9705, at *9 (E.D. Pa. May 19, 2005) (11.4% of damages) Accordingly, this factor favors approval of the Settlement.

### vi. The Opinions of Class Counsel and the Class Representative

The parties and class counsel unanimously support the proposed settlement, lending further support to approval of the Agreement. *See Celeste*, 2022 U.S. Dist. LEXIS 226841, at *21; *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (noting that "absent fraud, collusion, or the like," the Court "should be hesitant to substitute its own judgment for that of counsel"); Phillips Decl., ¶¶ 18, 23. Moreover, after robust and comprehensive Notice, *not a single Settlement Class Member objected* and only fourteen Settlement Class Members opted out. This is an incredible result, indicating overwhelming (indeed, unanimous) approval of the proposed Settlement, and strongly favors approval of the Agreement. *See generally, e.g.*, *In re Oil Spill*, 295 F.R.D. 112, 150 (E.D. La. 2013) (noting that "one indication of the fairness of a settlement is the lack of or small number of objections"); *Quintanilla v. A & R Demolition Inc.*, No. H-04-CV-1965, 2008 U.S. Dist. LEXIS 37449, 2008 WL 9410399, *5 (S.D. Tex. May 7, 2008) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 527 (E.D. Ky. 2010) (finding that 12 objections out of a class of approximately 8,000 was "within the range of reasonableness" and militated in favor of approval); *Armstrong v. Kimberly-Clark Corp.*, No. 3:20-CV-3150-M, 2024 U.S. Dist. LEXIS 45038, at *15 (N.D. Tex. Mar. 14, 2024) ("The lack of objections is indicative of the adequacy of the Settlement."); *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1063,

15

1068 (S.D. Tex. 2012) ("The fact that only one objection was filed is itself significant" especially where "there has been an energetic notice campaign"); *Amos v. PPG Indus.*, No. 2:05-cv-70, 2019 U.S. Dist. LEXIS 139021, at *30 (S.D. Oh. Aug. 16, 2019) ("[N]o objections were filed, which creates the inference that all or most of the class members had no concerns about the proposed settlement. This positive response weighs in favor of approving the settlement.").

It is not that a "small number" of objections were filled—there were *none at all*. The importance of this cannot be overstated: Typically, if the Parties believe they have a favorable Settlement and so does a court, Notice is provided to absent Class Members so they can review the proposed terms and identify any alleged weaknesses or deficiencies, with the main purpose of the final Fairness Hearing being to resolve such objections. Here, there are no objections to resolve. This *strongly* militates in favor of approving the proposed Agreement.

### III. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.

As explained in the Motion for Preliminary Approval, if no litigated class has yet been certified when a proposed Class settlement is achieved, courts analyze whether the requirements of Fed. R. Civ. P. 23 for certification of a class for settlement purposes are satisfied. But, in amending Rule 23 in 2018, the Advisory Committee clarified that when considering a proposed Settlement Agreement for members of a Class already certified by a court, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." See Fed. R. Civ. P. 23(e)(1)(B), Committee Notes on Rules—2018 Amendment. This Court previously already class certification after contested briefing and the Fifth Circuit affirmed that Order. Dkt. No. 69; *see also Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727 (5th Cir. 2023).

Error! Unknown document property name.

The only difference between the classes certified by this Court and the proposed Settlement Class is the Settlement Class runs through the date on which preliminary approval is granted, rather than ending on the date the litigated classes were certified. Phillips Decl. at ¶ 16. As such, for the same reasons explained in the Order certifying the litigation classes in this matter and in the Fifth Circuit's opinion in affirming this Court's order certifying the Class, each Rule 23 requirement is satisfied for the proposed Settlement Classes, defined as:

**Regulatory Fees Class:**

All Insureds covered under any Texas private passenger automobile insurance policy that defined "Actual Cash Value" under Section III of the policy as "the replacement cost of the auto or property less ***depreciation*** and/or ***betterment***" issued by GEICO Advantage Insurance Company, GEICO Indemnity Company, Government Employees Insurance Company, GEICO County Mutual Insurance Company, and GEICO Choice Insurance Company and their subsidiaries or related insurance companies (collectively, "GEICO") who made a first-party physical damage claim from March 5, 2016, through the date the Motion for Preliminary Approval was filed that GEICO paid as a total loss under comprehensive or collision coverage and who do not timely opt-out from the settlement class. The Regulatory Fees Class does not include any members of the Sales Tax Class.

**Sales Tax Class:**

All Insureds covered under any Texas private passenger automobile insurance policy that defined "Actual Cash Value" under Section III of the policy as "the replacement cost of the auto or property less ***depreciation*** and/or ***betterment*** issued by GEICO who made a first-party property damage claim on a leased vehicle from March 5, 2016, through the date the Motion for Preliminary Approval was filed that GEICO paid as a total loss under comprehensive or collision coverage and who did not receive full state Sales Tax based on the adjusted vehicle value of the totaled vehicle as part of the settlement payment and who do not timely opt-out from the settlement class.

Excluded from the Classes are:

(1) GEICO, all present or former officers and/or directors of GEICO, the Neutral Evaluator, Class Counsel, and a Judge of this Court;
(2) Claims for which GEICO received a valid and executed release;
(3) Claims where GEICO paid full Sales Tax and Regulatory Fees; and
(4) Claims subject to binding appraisal and/or arbitration where full Sales Tax and Regulatory Fees were paid.

## **CONCLUSION**

Plaintiffs respectfully request the Court grant final approval of the proposed settlement, and enter an order that includes the content of the proposed order attached as Exhibit 2 hereto, which (i) certifies the Class for Settlement purposes, (ii) finds that the Notice ordered by this Court was fair, adequate, and comported with due process and Rule 23, (iii) approves the Class Action Settlement, and (iv) enter an order finally approving the Settlement and of Final Judgment of Dismissal with Prejudice.

Respectfully submitted this 22nd day of July, 2024.

/s/ Jake Phillips

Jacob L. Phillips
**Jacobson Phillips PLLC**
478 E. Altamonte Dr.
Ste. 108-570
Altamonte Springs, FL 32701
Tel: (407) 720-405

Richard Daly
Texas Bar No. 00796429
John Scott Black
Texas Bar No. 24012292
**DALY & BLACK, P.C.**
2211 Norfolk St., Suite 800
Houston, TX 77098
Tel: (713) 655-1405
Rdaly@dalyblack.com
jblack@dalyblack.com

Andrew Shamis
Texas Bar No. 24112322
**SHAMIS & GENTILE, P.A.**
14 N.E. 1st Ave., Suite 705
Miami, Florida 33132
Tel: (305) 479-2299

**Error! Unknown document property name.**

ashamis@shamisgentile.com

Scott Edelsberg
**EDELSBERG LAW, PA**
20900 NE 30th Ave., Ste. 417
Aventura, FL 33180
Tel: (305) 975-3320
scott@edelsberglaw.com

Christopher B. Hall (admitted *pro hac vice*)
**HALL & LAMPROS, LLP**
400 Galleria Parkway, Suite 1150
Atlanta, GA 30339
Tel: (404) 876-8100
Fax: (404) 876-3477
chall@hallandlampros.com

***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of July, 2024, I electronically filed a true and exact copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/Jake Phillips*
Jacob Phillips (admitted *pro hac vice*)
Attorney for Plaintiffs and Class

**Error! Unknown document property name.**